**Vellar CLARK, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–07–01031–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 26, 2010.

Jani J. Maselli, Eric J. Davis, Houston, for appellant.

Eric Kugler, Houston, for appellee.

Panel consists of Justices YATES, FROST, and BROWN.

## OPINION

JEFFREY V. BROWN, Justice.

A jury convicted Vellar Clark, III of capital murder and sentenced him to life imprisonment with no possibility of parole in the Institutional Division of the Texas Department of Criminal Justice. Clark appeals the trial court's judgment. First, Clark contends that he was denied due process during the trial because the State harassed and badgered him during cross examination. Second, Clark asserts that the trial court reversibly erred by not granting his request for a writ of attachment, and he was harmed by this denial. Third, Clark contends that he was denied a fair trial when the trial court allowed improper opinion testimony from police officers about Clark's truthfulness. Finally, Clark asserts the court erred by denying Clark the opportunity to present evidence concerning the custody status of the complainant's child as well as various Child Protective Services ("CPS") records, which were allegedly essential evidence to his defense.[1] We affirm.

## I

Vellar Clark, III and Gwen Sneed met in 2002 through a motorcycle club. Although Clark was married at the time, he and Sneed had an affair and eventually started living together. As a result of the affair, Clark and Sneed had a son together. But in December 2004, their son died of unknown causes. CPS worker Stephanie Okpiabhele testified that she evaluated Sneed in early 2005, and Sneed told her that she had suicidal thoughts and feelings. When the State cross examined Okpiabhele, she testified that in 2006, Sneed's mental state had changed. She was now upbeat and happy because she was pregnant with another child, also by Clark, and "she had a very good outlook to life at that time." Sneed's mother, June Sneed, testified that Sneed believed her pregnancy was a miracle because she had undergone a tubal ligation in 2004. June Sneed also testified that Sneed told her Clark wanted Sneed to get an abortion, but she refused.

On March 26, 2006, a security guard found the body of Sneed in an isolated parking lot. She had died from a gunshot wound to her head that entered right behind her left ear. Sneed's unborn child also died when Sneed was shot. Sneed was found lying next to her motorcycle, which still had the key in the ignition, with all of her possessions intact except for her cell phone.

The Houston Police Department ("HPD") discovered Sneed's identity after June Sneed contacted the department. She had seen her daughter's motorcycle in a story on the evening television news.

---

1. Clark also contended that the trial court erred by not issuing a written statement containing its findings of fact and conclusions of law about Clark's motion to suppress. The trial court, however, issued findings and conclusions on April 28, 2009, and neither Clark nor the State has contested them. Therefore, we are overruling the issue as moot.

HPD officer Guillermo Gonzales testified that June Sneed suggested that he should speak with Clark about the shooting. Officers contacted Clark about a week after the shooting, and Clark voluntarily spoke with them about Sneed. He admitted to seeing Sneed drive by him that day on her motorcycle on her way to an anger-management class as well as to speaking to her on the phone sometime before noon.

Clark also told officers that later that day he went to his parents' home. HPD officers Breck McDaniel and Gonzales testified, however, that Clark's statement about his location could not be true because his cell-phone records did not indicate he was near his parents' home. In fact, his cell-phone records and Sneed's cell-phone records indicated that they were near each other at the time of her death. Additionally, the records showed that Sneed and Clark called each other numerous times during the hours before her death. When confronted with the cell-phones record during his second police interview, Clark admitted to being with Sneed when she died. Before trial, the court held a hearing on a motion to suppress Clark's statements that he made to officers during his police interviews. The court denied the motion.

In his defense, Clark testified at trial that Sneed told him to follow her to the empty parking lot. Clark stated that Sneed was upset and grabbed his gun out of his car. Clark testified that Sneed then asked him whether he was "going to be with her." Clark testified that when he responded no, Sneed shot herself in the back of the head. To support his theory of suicide, Clark requested that evidence concerning the custody status of Sneed's daughter as well as various CPS records be admitted into the record. The trial judge denied his multiple requests because of the tangential nature of the evidence as well as the potential prejudicial effect of the evidence.

After hearing all the evidence, the jury found Clark guilty on the charge of capital murder and sentenced him to life in prison without the possibility of parole. This appeal followed.

II

■ In his first issue, Clark contends that the trial court erred by constantly allowing the State to badger, harass, and physically intimidate him to the point of denying his right to a fair trial and due process. Clark highlights a number of the prosecutor's questions, comments, and tactics throughout the cross examination to illustrate the denial of due process. These examples range from the prosecutor telling Clark, "You're going to get caught in another lie," to the prosecutor holding a gun while questioning Clark. The State contends that Clark waived his due-process complaint because he never specifically objected to a violation of due-process rights during the cross examination. We agree with the State that Clark waived his first issue by not properly preserving error at trial.

■ The Texas Rules of Appellate Procedure require a party to preserve error for appellate review by demonstrating the error on the record. Tex.R.App. P. 33.1(a); *see also Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995). The party must make the complaint in a timely manner and "state[ ] the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint." Tex.R.App. P. 33.1(a)(1)(A). In raising the complaint on appeal, the party must ensure the point of error is the same as the complaint or objection made during trial. *Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App.

2002); *Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim.App.1991) (citing *Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim.App. 1986)). The Texas Court of Criminal Appeals has held that constitutional errors can also be waived if a party failed to properly object to the errors at trial. *Briggs v. State,* 789 S.W.2d 918, 924 (Tex. Crim.App.1990). Therefore, if a party's objection at trial does not correspond with its issue on appeal, the party has waived the issue. *Broxton,* 909 S.W.2d at 918.

Here, Clark repeatedly objected to the prosecutor's comments, questions, and tactics as sidebar, argumentative, mischaracterization, invading the province of the jury, and badgering. But Clark's issue on appeal is the denial of his due-process rights. Additionally, although Clark's brief discusses fundamental fairness in the context of prosecutorial misconduct, he did not object to prosecutorial misconduct at the trial. Furthermore, the prosecutor's cross examination does not rise to the level of fundamental error. *See Powell v. State,* 252 S.W.3d 742, 744–45 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (discussing how fundamental errors, which are " 'structural defects in the constitution of the trial mechanism,' " violate constitutional rights such as the right to impartial judge, the right to counsel, the right to not have members of the defendant's race unlawfully excluded from the grand jury, the right to self-representation, the right to a public trial, and the right to not have a judge taint the presumption of innocence) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Nor does the record reflect that Clark requested a motion for new trial because of the prejudicial effect of the cross examination on Clark's right to a fair trial. The record is simply devoid of a due-process objection or an objection that corresponds with the objections made at

the trial level. Therefore, Clark has waived this issue.

## III

In his second issue, Clark contends that the trial court reversibly erred by not granting his request for a writ of attachment. Specifically, Clark asserts that the testimony of his missing witness, Dr. Walker, was essential to his case, and he was harmed because of the court's failure to force Dr. Walker to appear. The State contends that since Clark never properly served Dr. Walker, the trial court was not required to issue a writ of attachment. We review the trial court's decision to deny the writ of attachment using the abuse-of-discretion standard. *See Emenhiser v. State,* 196 S.W.3d 915, 921 (Tex. App.-Fort Worth 2006, pet. ref'd); *Rodriguez v. State,* 90 S.W.3d 340, 358 (Tex. App.-El Paso 2001, pet. ref'd).

 Under both the United States Constitution and the Texas Constitution, a defendant has a right to compulsory process in order to call witnesses to testify on his behalf. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Etheridge v. State,* 903 S.W.2d 1, 7 (Tex.Crim.App.1994). The Texas Code of Criminal Procedure, however, requires a defendant to file an application for a subpoena with the trial court's clerk if the defendant wants to ensure the witness's presence. Tex.Crim. Proc.Code Ann. § 24.03(a) (Vernon 2009). The defendant must then properly serve the witness. *Id.* § 24.04(a) (Vernon 2009). If the witness ignores the "duly served" subpoena, the requesting party shall be entitled to a writ of attachment "commanding some peace officer to take the body of a witness and bring him before such court ... on the day named ... to testify in behalf of the State or of the defendant...." *Id.* § 24.11 (Vernon 2009); *see id.* § 24.12 (Vernon 2009); *see Rodela v. State,* 829 S.W.2d 845,

848 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

A defendant is not entitled to a writ of attachment if he fails to properly serve the subpoena on the witness. *Ford v. State*, 14 S.W.3d 382, 391–92 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *see Erwin v. State*, 729 S.W.2d 709, 713–14 (Tex.Crim.App.1987), *overruled on other grounds, Burks v. State*, 876 S.W.2d 877 (Tex.Crim.App.1994). If a party duly subpoenas a witness and the witness does not appear, the party must follow a three-step process to preserve error—the *Erwin* procedure. *Sturgeon v. State*, 106 S.W.3d 81, 85 (Tex.Crim.App.2003). The *Erwin* procedure includes: (1) seeking a writ of attachment, which the trial court must deny; (2) showing the court what the witness would have testified to; and (3) demonstrating that the witness's testimony would have been relevant and material. *Sturgeon*, 106 S.W.3d at 85 (citing *Erwin*, 729 S.W.2d at 714). In *Sturgeon*, the court stated the "proper showing" requirement in step two of the procedure must be ascertainable from the record. *Id.* at 85–88. The court concluded that because Sturgeon had fully explained what the witness was expected to testify to, error was preserved. *Id.* at 89–90. Finally, the court asserted that in detailing the witness's purported testimony, Sturgeon had also demonstrated the witness's relevance and materiality to his case. *Id.* at 90.

Clark contends that the trial court should have issued a writ of attachment and erred in failing to do so. At trial, Clark wanted to question his expert, Dr. Walker, about Sneed's state of mind in order to support his defense of suicide.

The appellate record indicates that Clark properly served a subpoena on Dr. Walker, thereby fulfilling the first step in the *Erwin* procedure. But Clark has not met the next two steps in the *Erwin* procedure. Clark's attorney never made a "proper showing" to preserve error on the record or demonstrated the materiality of Dr. Walker's testimony. Clark's attorney merely stated, "Dr. Walker's testimony would be essential and bears on the facts."

Even if Clark met the last two steps of the *Erwin* procedure, the exclusion of Dr. Walker's testimony would not rise to reversible error. *Id.* at 88. CPS worker Okpiabhele testified that she had directed Sneed to get a psychological evaluation. The records Clark sought to introduce included Dr. Walker's psychological evaluation of Sneed. The jury, however, heard testimony about the evaluation because Clark's last witness, Dr. Flynn, testified about reviewing it. He testified that the report stated that Sneed had many mental disorders and that these disorders increased her risk of suicide. Because the jury heard testimony about the results of the psychological evaluation, any error would not have risen to the level of a reversible error. Accordingly, we overrule Clark's second issue.

## IV

In his third issue, Clark contends that the trial court improperly allowed a State's witness to testify about his truthfulness; therefore, he was denied due process and the right to a fair trial. Clark points to the testimony of State's witness Sergeant Harris to illustrate where in the record Clark's veracity was questioned.[2]

---

2. Clark claims in his appellate brief that "Sergeant Gonzales also conveyed his belief that Mr. Clark was lying." While the State did ask Sergeant Gonzales whether he perceived that Clark was lying, Clark objected to the

question before the sergeant answered, and the court sustained the objection. Because Clark only highlighted this portion of Sergeant Gonzales's testimony in his brief and the officer never had a chance to respond to

Clark objected to the testimony invading the province of the jury as well as being an improper opinion. The State asserts that the officer's testimony was based on his perception and was helpful to the understanding of his testimony, in accordance with Texas Rule of Evidence 701. Additionally, the State contends that even if the trial court erred, the error was harmless. We review the trial court's decision using an abuse-of-discretion standard. *Fairow v. State*, 943 S.W.2d 895, 901 (Tex.Crim. App.1997). If evidence supports the trial court's decision to admit evidence, then there is no abuse of discretion, and the appellate court must defer to the trial court's decision. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex.Crim.App.2002) (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App.2001); *Fairow*, 943 S.W.2d at 901).

Clark primarily relies on *Schutz v. State* for the proposition that one witness may not directly comment or testify to the veracity of another witness. 957 S.W.2d 52, 59 (Tex.Crim.App.1997). Clark also asserts that Sergeant Harris's testimony exceeds the bounds of Rule 701. Furthermore, Clark argues that Sergeant Harris may not serve as a "human lie detector" or decide an issue for the jury—Clark's credibility.

▇▇▇▇▇ "A witness can testify in the form of an opinion under Rule 701 if the opinions or inferences are (a) rationally based on his or her perceptions and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue." *Osbourn*, 92 S.W.3d at 535. While police officers typically testify as qualified experts under Rule 702, an officer may also be considered a lay witness under Rule 701. *See id.* at 536–37. In order for lay testimony to be based on a witness's

perception, the witness must have personally experienced or observed the event. *See id.* at 535. The witness may also make reasonable inferences based on his perceptions. *See Wilson v. State*, 605 S.W.2d 284, 286–87 (Tex.Crim.App.1980). Sergeant Harris assisted in the investigation of Clark as well as interviewed him during his second police interview. He questioned Clark about Sneed's death and testified to Clark's behavior during the interview. Specifically, he testified to Clark's evasiveness as well as the inconsistencies in his story from his first interview.

Sergeant Harris's testimony, however, sometimes exceeded merely describing his observations and perceptions of Clark. During the testimony, Sergeant Harris testified that Clark changed his story and had a selective memory. He stated that a truthful person would be able to remember all the details of Sneed's alleged suicide. Sergeant Harris also testified that he did not believe Clark's story because it was "ridiculous" and inconsistent. Defense counsel objected to this line of questioning, and the trial court both overruled and sustained objections to Sergeant Harris's responses.

▇▇▇▇▇ Without deciding whether the court erred in admitting Sergeant Harris's testimony, we review the record to determine if any error would be harmful. Rule of Appellate Procedure 44.2(b) states that a non-constitutional error, which does not affect the defendant's substantial rights, must be disregarded. Tex.R.App. P. 44.2(b). A substantial right is affected if: (a) the error influences the jury's verdict or creates a " 'substantial or injurious' " effect or (b) " 'leaves one in grave doubt whether it had such an effect.' " *Sauceda v. State*, 162 S.W.3d 591, 597 (Tex.App.- Houston [14th Dist.] 2005, pet. ref'd) (quot-

the State's question, we do not consider Ser- geant Gonzales's testimony in our analysis.

ing *Davis v. State*, 22 S.W.3d 8, 12 (Tex. App.-Houston [14th Dist.] 2000, no pet.)). In conducting a harm analysis, we consider the record in its entirety, including all admitted evidence, "the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App.2002); *Sauceda*, 162 S.W.3d at 597. We may also review the parties' closing arguments, the parties' theories of the case, jury instructions, and whether the State highlighted the error. *Motilla*, 78 S.W.3d at 355–56.

In reviewing the record, we find the error, if any, to be harmless, as evidence of Clark's guilt is pervasive throughout the record. While Clark contends that Sneed's death was a suicide, the State presented evidence that suicide was highly unlikely. State witnesses testified that Sneed was pregnant. They testified that she wanted to have her baby because she thought it was a miracle she was pregnant. There was evidence that Clark had asked Sneed to get an abortion and that she refused. Even Clark's own witness, CPS worker Okpiabhele, testified that although Sneed had expressed thoughts of suicide in 2005, in 2006, Sneed "was happy [and] upbeat" and "she had a very good outlook to life at that time." Additionally, various HPD officers testified that it was highly unlikely Sneed shot herself because of the angle of the bullet wound through her head, the high probability of the gun jamming at that angle, and the lack of stippling around her wound.

When first questioned about the incident, Clark told the police he was not present at the shooting. But after officers told Clark they had traced the location of his cell phone and Sneed's cell phone, Clark admitted to being with Sneed when she died. Moreover, Clark himself admitted to lying to police officers. He testified that he lied about his whereabouts the day Sneed died as well as his contact with Sneed and his wife that day. The evidence of his guilt along with the fact that, in the presence of the jury, Clark admitted to lying numerous times to police officers renders any possible error harmless. We overrule his third issue.

V

In his fourth issue, Clark contends that the court erred by denying him the opportunity to present evidence concerning the custody status of Sneed's child as well as various CPS records. Clark asserts this amounts to a denial of his right to present a defense—that Sneed committed suicide. Specifically, Clark alleges that the court improperly denied evidence regarding (1) CPS's removal of Sneed's daughter, (2) questions on cross examination of Sneed's mother about her knowledge of CPS records or their contents, (3) CPS records concerning Sneed's daughter and the death of her son, and (4) Sneed's motive for being "upbeat" to the CPS worker. The State contends that the court correctly decided that the abovementioned evidence's prejudicial effect substantially outweighed its probative value and that the evidence was merely tangential to the case. Additionally, the State asserts that even if there was error, it was harmless.

We review the trial court's exclusion of the evidence using an abuse-of-discretion standard. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex.Crim.App.2005); *Webb v. State*, 991 S.W.2d 408, 418 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). Although a trial court has substantial discretion, it can abuse its discretion if its rulings are outside of "that zone within which reasonable persons might disagree." *Webb*, 991 S.W.2d at 418; *see Apolinar*, 155 S.W.3d at 186. A trial court's ruling

on the admissibility of evidence will be upheld if the record reasonably supports the ruling. *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App.2002).

Clark contends that "any right ... to present his defense was wholly and completely eviscerated by the trial court in violation of the Constitution...." He cites *Potier v. State*, 68 S.W.3d 657 (Tex.Crim. App.2002), to support his contention that the denial of evidence was not merely an erroneous ruling, but a constitutional violation. In *Potier*, the appellant was convicted of murder, but he had claimed self-defense during the trial. *Id.* at 658. The appellant complained on appeal that the trial court had excluded testimony from his neighbors that the victim intended to kill him, thereby significantly impeding his defense. *Id.* The court of appeals agreed that the trial court erroneously excluded the evidence, but concluded that the error was harmless. *Id.*

The Court of Criminal Appeals in *Potier* reviewed Supreme Court decisions and federal circuit court cases to chronicle how erroneous rulings rise to constitutional violations. *Id.* at 659–65. In *United States v. Scheffer*, the Supreme Court stated that a defendant does not have a constitutional right to present favorable evidence. 523 U.S. 303, 316, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Additionally, a trial court can place reasonable restrictions on the evidence a defendant presents to the jury. *Potier*, 68 S.W.3d at 659 (citing *Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate' to the purposes they are designed to serve." *Id.* at

659 (quoting *Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261). After reviewing both Supreme Court and federal circuit court cases, the *Potier* court concluded that a constitutional right to present a meaningful defense is rarely denied by an incorrect evidentiary ruling. *Id.* at 663.

■ The court differentiated between the error standard set out in Rule of Appellate Procedure 44.2(a), which discusses constitutional errors, and Rule 44.2(b), which discusses non-constitutional errors. *Id.* at 658–59, 665–66.[3] An error, however, will only be constitutional if (1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering reliable or relevant evidence that is vital to his defense, or (2) a trial court's erroneous ruling excludes evidence that "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Id.* at 665; *see also Wiley v. State*, 74 S.W.3d 399, 405–08 (Tex.Crim.App.2002) (upholding the trial court's decision that the danger of unfair prejudice substantially outweighed the probative value of the "alternative perpetrator" evidence, and did not deprive the defendant of his right to present a defense). The court in *Potier* examined the evidence the defendant was allowed to introduce to the jury, and it affirmed the court of appeals's decision because the evidence was sufficient enough to present a defense. 68 S.W.3d at 665–66 ("It may be seen that the erroneously excluded evidence was relevant to the defense of self-defense, but that their exclusion did not prevent the appellant from presenting a defense. For this rea-

---

**3.** "If the appellate record ... reveals constitutional error ... the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not con-

tribute to the conviction or punishment." Tex.R.App. P. 44.2(a). "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b).

son, the error was not of constitutional dimension.").

As in *Potier,* the trial court's ruling did not preclude Clark from presenting his defense of suicide. Clark introduced evidence through the State's witness, Mohamed Almohamed, that Sneed could have committed suicide because the gun used to kill her had a substantial kickback. Almohamed testified that it was possible that Sneed was aiming the gun at her temple, but because of the kickback, the bullet entered through the back of her head. Clark was also allowed to cross examine Sneed's mother about Sneed's mental state. But when questioned, Sneed's mother testified that her daughter was neither bipolar nor mentally ill. Furthermore, Clark later testified that he was an eyewitness to Sneed's suicide. Clark referred to Sneed's alleged suicide numerous times during his testimony as well as during his closing. CPS worker Okpiabhele testified that in August 2005, Sneed expressed feelings of depression and suicide. The CPS worker also testified that she had directed Sneed to get a psychological evaluation. Finally, Clark's last witness, Dr. Flynn, testified about reviewing the CPS records. Dr. Flynn testified that Sneed had many mental disorders and that these disorders increased her risk of suicide. He further stated that it was possible for a right-handed person, like Sneed, to commit suicide with her left hand.

Through testimony, Clark was able to present his suicide defense. " 'That [the defendant] was unable to ... present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury.' " *Id.* at 666 (quoting *United States v. Willie,* 941 F.2d 1384, 1398–99 (10th Cir.1991). Because Clark was able to present his defense, we do not consider this a constitutional error under Rule 44.2(a); hence, his due-process rights were not violated.[4] We overrule Clark's fourth issue.

\* \* \*

For the foregoing reasons, we affirm the trial court's judgment.

---

**4.** Because Clark asserts only a due-process claim we need not decide whether the trial court's rulings on Clark's hearsay and Rule 403 objections were either erroneous or harmful under Rule 44.2(b). *See Kesaria v.*

*State,* 148 S.W.3d 634, 642–43 (Tex.App.-Houston [14th Dist.] ) 2004, *aff'd,* 189 S.W.3d 279 (Tex.Crim.App.2006). A harmless error analysis under Rule 44.2(b) is therefore not necessary. *See id.*