Opinion issued August 12, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00824-CR

———————————

DANIEL MOSES SCOPE, Appellant

V.

THE STATE OF
TEXAS, Appellee



 



 

On Appeal from the 182nd District Court

Harris County, Texas



Trial Court Case No. 1145238

 



 

MEMORANDUM OPINION

          Appellant
Daniel Moses Scope was indicted for aggravated robbery.  A jury convicted Scope of the lesser-included
offense of aggravated assault with a deadly weapon, and the trial court
assessed punishment at 20 years’ confinement in prison.  See
Tex. Penal Code Ann. § 22.02(a)
(Vernon Supp. 2009).  In two issues,
Scope argues that the prosecutor engaged in intentional misconduct by
questioning Scope about the differences in the punishment ranges for aggravated
robbery and for aggravated assault and by implying that Scope was previously
convicted of aggravated assault.  Scope
failed to preserve the errors alleged in these two issues, and thus they have
been waived.  In a third issue, Scope
contends that he received ineffective assistance of counsel because his trial
counsel elicited admissions from him about prior convictions for theft and for possession
of a controlled substance.  We overrule
this issue because a trial court would not have abused its discretion in
admitting evidence of the prior convictions, and therefore trial counsel is
presumed to have employed a reasonable trial strategy in this regard.  Accordingly, we affirm.

Background

The
Complainant’s Account of the Shooting

          On
December 3, 2007, Scope called complainant Dillon Keith to purchase
cocaine.  Keith testified that he had
sold cocaine to Scope before, and on this occasion Scope tried to negotiate a better
price.  They met in front of Scope’s
apartment complex.  According to Keith,
Scope got into Keith’s car and almost immediately put a gun to Keith’s neck and
demanded his backpack, which ordinarily contained his possessions including any
cocaine or marijuana he might have for sale. 
He tried to convince Scope to put the gun down, reminding Scope that he knew
his friends, where he lived, and his phone number.  He then “pancaked” Scope’s gun between his
hands and wrested it away.  As he tried
to push Scope out of the car, Scope said, “Don’t get shot,” pulled out a second
gun, and shot Keith.  Keith climbed out of
the window and ran around the car to confront Scope.  After a brief struggle, Keith felt a gun at
his neck, heard a shot, and fell to the ground. 
He then watched Scope take his backpack from the car and leave.  Keith testified unequivocally that Scope shot
him without provocation and left him paralyzed from the neck down.

          A
resident of the apartment complex found Keith and called 9-1-1.  The resident testified that Keith said he was
shot by “D,” referring to Scope by a nickname, and that “D’s” phone number was
in his cell phone.  The paramedics who
responded to the 9-1-1 call took Keith to the hospital.

Scope’s
Account of the Shooting

          Scope
testified in his own defense and also presented the testimony of another
apartment resident who heard gunshots but testified that she did not see the
shooting and had never seen Scope before in her life.  Scope’s account differed greatly from
Keith’s.  Scope testified that he met
Keith to buy cocaine and that Keith attempted to overcharge him.  Scope conceded that he used profanity to assault
Keith verbally, but testified that it was Keith who pulled a gun on him.  Then, while the men wrestled for the gun, the
gun fired and Keith was shot.

Scope insisted that Keith was still
holding the gun when it went off—that Keith shot himself causing an entry wound
in his lower right side and an exit wound through Keith’s left hip.  He also said that Keith climbed out of the
window and came around the back of the car to further attack Scope.  He pushed Keith to the ground, where he dropped
the gun.  Scope then picked up the gun,
shot Keith, and left with the gun.  The
next day he put the gun in a dumpster.

Although Scope testified that he
shot Keith because he had feared for his life, on cross-examination he agreed
that he shot an unarmed man, albeit in claimed self-defense.  Scope said he did not intend to shoot Keith
or to rob him.

Scope admitted that he had
previously been convicted of possession of a controlled substance and theft.

The Police
Investigation

Houston Police Officer W. Wilson
responded to the 9-1-1 call.  He
investigated the scene and found three spent shell casings, including one found
in the driver’s seat.  Wilson testified
that his partner found a small plastic bag of cocaine near the front passenger
seat on the floorboard.  He also
testified that Keith’s hands were not tested for gunpowder residue, because he was
already on the way to the hospital.

          Houston
Police Sergeant C. Howard investigated the incident.  After Keith told him the nickname of the
person who shot him, Howard compiled a photographic lineup, from which Keith
immediately identified Scope as his attacker. 
Approximately ten days after the shooting, Howard went to Scope’s home
and arrested him.  Scope consented to a search
of his bedroom, where Howard found a green-and-black backpack.  Keith later said that was not the backpack
taken from his car.  

          Howard
brought Scope to the police station, where Scope gave a statement, denying he
was present at the scene of the shooting. 
Howard testified, without objection, that he did not believe Scope’s
statement.  Scope testified that he was
not truthful with the police because he was scared about his involvement in a
drug deal.  Scope insisted that he was
telling the truth at trial and that Keith was lying.

Prosecutorial Misconduct Allegations

In his first two issues, Scope
contends that the prosecutor engaged in intentional misconduct by questioning him
during the guilt-innocence phase of trial about his awareness of the punishment
range for the lesser-included offense of aggravated assault.[1]  To preserve error for prosecutorial
misconduct, an appellant must (1) make a timely and specific objection; (2)
request an instruction to disregard the matter improperly placed before the
jury; and (3) move for a mistrial.  See Tex.
R. App. P. 33.1(a); Archie v.
State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); Penry v. State, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); Hajjar v. State, 176 S.W.3d 554, 566
(Tex. App.—Houston [1st Dist.] 2004, pet. ref’d).  “It is well settled that when appellant has
been given all the relief he requested at trial, there is nothing to complain
of on appeal.”  Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993) (holding
that appellant failed to preserve error as to State’s improper jury argument
because his objection was sustained and he did not move for mistrial).

An objection at trial must comport
with the complaint on appeal.  Wilson v. State, 71 S.W.3d 346, 349
(Tex. Crim. App. 2002).  Thus, an
appellate complaint about prosecutorial misconduct must be supported by an
objection in the trial court that also specified prosecutorial misconduct.  Clark
v. State, 305 S.W.3d 351, 355 (Tex.
App.—Houston [14th Dist.] 2010, no pet.); Shelling
v. State, 52 S.W.3d 213, 223–24 (Tex. App.—Houston [1st Dist.] 2001, pet.
ref’d).  In Shelling, a murder case, the evidence showed that the defendant carefully
followed the O.J. Simpson trial during a time when he allegedly abused and
stalked his wife and murdered her friend. 
Shelling, 52 S.W.3d at
216–17.  In its opening statement, the
State asserted that there were numerous similarities between the defendant’s
case and the O.J. Simpson case.  Id. at 223.  The defendant’s attorney objected, saying, “I
would continue to object to any O.J. reference,” and the trial court overruled
his objection.  Id.  The defendant’s attorney
then asked for a running objection, and the trial court said, “Yes.”  Id.  This Court held that the defendant had waived
his appellate complaint about prosecutorial misconduct because his trial
objection was general and did not specify prosecutorial misconduct.  Id.
at 224.  

Similarly, the defendant in Clark argued on appeal that the trial
court had erred “by constantly allowing the State to badger, harass, and
physically intimidate him” during his capital murder trial.  Clark,
305 S.W.3d at 354.  On appeal, the defendant argued that his
trial was fundamentally unfair due to prosecutorial misconduct.  Id.
at 355.  However, at trial the defendant repeatedly
objected on the grounds of “sidebar, argumentative, mischaracterization,
invading the province of the jury, and badgering.”  Id.
 Noting that the defendant did not object
to prosecutorial misconduct at trial and that his appellate issues did not
comport with his trial objections, the court of appeals held that the defendant
had waived his complaint.  Id.

          Here,
during cross-examination, the prosecutor asked Scope if he knew the difference
in punishment ranges between aggravated robbery and aggravated assault.

STATE:      And actually the reason you’re bringing
out this information about an aggravated assault rather than an aggravated
robbery is you know the punishment range changes, right?

 

DEFENSE COUNSEL: Object, Your Honor.  Calls for him to understand . . . make a
legal conclusion, I should say.

 

TRIAL
COURT:  Overruled.  You can—

 

STATE:      You understand that you go from one
penalty to the next, one crime charge to the next, aggravated robbery is five
to life, aggravated assault is two to 20. 
You understand there’s a big difference there, right?

 

SCOPE:      Yes, sir.

 

STATE:      And you know that because you’ve had that
benefit before, right?

 

DEFENSE
COUNSEL: Object, Your Honor.

 

TRIAL
COURT:  Sustained as to the form of the
question.

 

DEFENSE COUNSEL: Ask that the jury be instructed to disregard
the question. 

 

TRIAL COURT:  Jury’s instructed to disregard the last
question from the prosecutor.

 

STATE:      Now, clearly, you’re motivated to say what
you’re saying because, one, it’s going to lessen the punishment range, right?

 

SCOPE:      No, sir.

 

STATE:      And, two, because it gives you the
opportunity to raise self-defense as an issue?

 

SCOPE:      No, sir.

 

          First,
Scope challenges the question inquiring if he knew about the difference in
punishment ranges.  Scope objected to
this question only on the grounds that it called for a legal conclusion, and
the trial court overruled his objection. 
He did not specify “prosecutorial misconduct” as a basis for his
objection.  Scope’s appellate issue does
not comport with his trial objection.  See Wilson,
71 S.W.3d at 349.  Scope’s trial
objection did not preserve the appellate issue he raises.  See
Shelling, 52 S.W.3d at 223–24; Clark, 305 S.W.3d at 355; accord Hajjar, 176 S.W.3d
at 566 (holding prosecutorial misconduct
issues waived because defendant made no objections on that basis in trial
court).  We hold that Scope has waived
his first issue.

In his second issue, Scope
challenges the question inquiring if he had benefited from a difference in
punishment ranges in the past.  As to
this question, Scope made only a general objection, specifying no basis for his
objection at all.  The trial court
sustained his objection “as to the form of the question” and instructed the
jury to disregard it.  Scope failed to
request a mistrial.  Thus, the trial
court gave Scope all the relief he requested. 
We hold that Scope has waived this issue.  See
Cook, 858 S.W.2d at 473 (“It is well settled that when appellant has been
given all the relief he requested at trial, there is nothing to complain of on
appeal.”).  We overrule Scope’s second
issue. 

Ineffective Assistance of Counsel

In his third issue, Scope contends
that he received ineffective assistance of counsel when his trial counsel
questioned him about prior convictions for possession of a controlled substance
and for theft from a person.  Scope
argues that the State would have been precluded from introducing these
convictions into evidence, and therefore no reasonable trial strategy could
support his trial counsel’s decision to put these convictions before the jury.

Standard of
Review

The standard of review for claims
of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687–96, 104 S. Ct. 2052,
2064–69 (1984), and Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002). 
To prevail on his claims, an appellant must first show that his
counsel’s performance was deficient.  Strickland, 466 U.S. at 687, 104 S. Ct.
at 2064; Bone, 77 S.W.3d at 833.  “Specifically, appellant must prove, by a
preponderance of the evidence, that his counsel’s representation fell below the
objective standard of professional norms.” 
Bone, 77 S.W.3d at 833.  “Second, appellant must show that this
deficient performance prejudiced his defense.” 
Id.  This means that appellant “must show a
reasonable probability that, but for his counsel’s unprofessional errors, the
result of the proceeding would have been different.”  Id.
(quoting Mitchell v. State, 68 S.W.3d
640, 642 (Tex. Crim. App. 2002)).  A
“reasonable probability” is one “sufficient to undermine confidence in the
outcome.”  Bone, 77 S.W.3d at 833. 
Thus, the “benchmark for judging any claim of ineffectiveness must be
whether counsel’s conduct so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a
just result.”  Strickland, 466 U.S. at 686, 104 S. Ct. at 2064.

There is a strong presumption that
counsel’s conduct fell within the wide range of reasonable professional
assistance, and the appellant must overcome the presumption that the challenged
action might be considered sound trial strategy. Id., 466 U.S. at 689, 104 S. Ct. at 2065.  To overcome the presumption of reasonable
professional assistance, “any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.”  Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999).  When determining
the validity of an ineffective assistance of counsel claim, judicial review
must be highly deferential to trial counsel and avoid the deleterious effects
of hindsight.  Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).  The record on direct appeal will rarely
contain sufficient information to evaluate an ineffective assistance of counsel
claim.  See Bone, 77 S.W.3d at 833. Based on such a record, a finding that
counsel was ineffective would normally require impermissible speculation by the
appellate court.  Stults v. State, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.]
2000, pet. ref’d).  When the record is
silent as to trial counsel’s strategy, we will not conclude that trial counsel’s
assistance was ineffective unless the challenged conduct was “‘so outrageous
that no competent attorney would have engaged in it.’”  Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v. State, 57 S.W.3d 436, 440
(Tex. Crim. App. 2001)).

Admission of Prior Convictions

          Eliciting
testimony from the defendant as to his own prior convictions can be a matter of
sound trial strategy, if the prior convictions are admissible.  Martin
v. State, 265 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2007, no pet.); Rodriguez
v. State, 129 S.W.3d 551, 558–59 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d).  However, if prior convictions
are inadmissible, there can be no reasonable trial strategy for introducing
them before the jury.  Robertson v. State, 187 S.W.3d 475, 485–86
(Tex. Crim. App. 2006); Martin, 265
S.W.3d at 443; Rodriguez, 129 S.W.3d
at 559.

A trial court has wide latitude to
admit or exclude evidence as it sees fit. Theus
v. State, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992).  As long as the trial court’s ruling was
within the zone of reasonable disagreement, an appellate court will not disturb
it.  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Rule 609 provides that evidence of
a witness’s prior convictions is admissible for purposes of impeachment if the
crime was a felony or a crime of moral turpitude and if the trial court
determines its probative value outweighs its prejudicial effect.[2]  Tex. R.
Evid. 609(a); Davis v. State,
259 S.W.3d 778, 780–81 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d).  However, such evidence is inadmissible if ten
or more years have passed since the conviction date or the witness’s release
from confinement, whichever is later, unless the court determines the probative
value substantially outweighs its prejudicial effect.  Tex. R.
Evid. 609(b); Davis, 259
S.W.3d at 781.  The proponent seeking to
introduce Rule 609 evidence has the burden of showing that the probative value
of a conviction outweighs its prejudicial effect.  Theus,
845 S.W.2d at 880.

The Court of Criminal Appeals has
set out a nonexclusive list of factors courts should use to weigh the probative
value of a conviction against its prejudicial effect.  Id.  These include: (1) the impeachment value of
the prior crime; (2) the temporal proximity of the past crime relative to the charged
offense and the witness’s subsequent history; (3) the similarity between the
past crime and the charged offense; (4) the importance of the witness’s
testimony; and (5) the importance of the witness’s credibility.  Id.  The proponent seeking to introduce Rule 609
evidence has the burden of showing that the probative value of a conviction
outweighs its prejudicial effect.  Id. 
“We consider these factors in our Rule 609(b) analysis.”  Davis,
259 S.W.3d at 782.

1.     Impeachment Value of Prior Convictions

          With
respect to the first factor, the Court of Criminal Appeals has stated that
crimes involving deception or moral turpitude have a higher impeachment value
than crimes involving violence.  Theus, 845 S.W.2d at 881.  The impeachment value of a prior conviction
for possession of a controlled substance is low because this crime does not
necessarily involve deception, and this Court has previously concluded “it is
quite obviously not a crime of violence.” 
Denman v. State, 193 S.W.3d
129, 136 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d); see Theus, 845 S.W.2d at 881. 

Applying the Theus factors to Scope’s prior conviction for possession of a
controlled substance, we conclude that its impeachment value is low, particularly
in a trial in which the defendant admitted his participation in a drug
transaction, and that this factor does not favor admissibility of this
conviction.  As to Scope’s prior
conviction for theft from a person, we observe that theft is a crime of moral
turpitude because it involves deception. 
See Rodriguez, 129 S.W.3d at
559.  Because this prior offense has a
heightened impeachment value, the first Theus
factor weighs in favor of admissibility.

2.     Temporal Proximity of Prior Crimes

The second Theus factor favors admission “if the past crime was recently
committed and if the witness has demonstrated a propensity for breaking the
law.”  Simpson v. State, 886 S.W.2d 449, 452 (Tex. App.—Houston [1st
Dist.] 1994, pet. ref’d); accord Thomas
v. State, 312 S.W.3d 732, 739–40 (Tex. App.—Houston [1st Dist.] 2009, pet.
ref’d).  Scope was convicted of theft
from a person in 2006 and possession of a controlled substance in 2007.  He does not contend that these convictions were
too remote to be admissible.  Because
these crimes were committed near in time to the charged offense, they
demonstrate Scope’s propensity to run afoul of the law, and the second Theus factor weighs in favor of
admissibility for both prior convictions.

3.     Similarity Between Prior and Charged Offenses

Similarity between a prior offense
and the current offense weighs against admissibility under Rule 609, whereas
dissimilarity between the prior offense and the current offense favors
admissibility.  Theus, 845 S.W.2d at 881; Davis,
259 S.W.3d at 783.  “This is so because
the admission for impeachment purposes of a crime similar to that charged
presents a situation in which the jury could convict based on the perception of
the past conduct rather than the facts of the present case.”  Thomas,
312 S.W.3d at 740. 

With respect to Scope’s prior
conviction for possession of a controlled substance, we conclude that the
dissimilarity in the two offenses weigh in favor of admissibility.  However, both aggravated robbery and theft
include the same theft elements.  Scope’s
prior conviction for theft is not precisely similar because aggravated robbery
includes an element of violence not present in theft, however we conclude that
the similarity would weigh in favor of exclusion.  Thus, the third Theus factor favors admissibility of Scope’s prior conviction for
possession of a controlled substance, but it disfavors admissibility of Scope’s
prior conviction for theft.  

4.     Importance of Testimony and Credibility

“Finally, under the fourth and
fifth factors, we consider the importance of appellant’s testimony and of his
credibility.”  Martin, 265 S.W.3d at 445 (citing Theus, 845 S.W.2d at 881). 
We consider the appellant’s defense and the means at his disposal to
prove that defense.  Id.  Only Scope and Keith
were present when the shooting occurred. 
Although one witness testified that she heard gunshots and another found
Keith after the shooting, no other eyewitness testified at trial.  Thus, the jury’s verdict on guilt or
innocence depended almost entirely on its assessment of Scope’s and Keith’s
credibility.  Thus, these factors would
have weighed heavily in favor of admission of both of Scope’s prior
convictions.  See Theus, 845 S.W.2d at
881.

*        *        *

          Having
considered the Theus factors, we
conclude that the trial court would have acted within its discretion to admit
Scope’s prior convictions if the State had sought to use them for impeachment.  Therefore, because these prior convictions
would have been admissible, we hold that Scope has not overcome the presumption
that his trial counsel employed a reasonable trial strategy by eliciting
testimony from Scope about his prior convictions, while attempting to portray him
as truthful.[3]  See
Martin, 265 S.W.3d at 443; Rodriguez, 129 S.W.3d at 558–59.  We overrule Scope’s third issue.

Conclusion

We affirm
the judgment of the trial court.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]        In his
brief, Scope argues that the usual harm that results from informing a jury that
a lesser-included offense is governed by a lower punishment range is that the
jury will convict the defendant of the greater offense because it does not
believe the punishment for the lesser-included offense is sufficient.  We note that the trial court imposed the
sentence in this case.





[2]        Rule 609.  Impeachment
by Evidence of Conviction of Crime.

 

(a)
 General Rule.  For the purpose of attacking the credibility
of a witness, evidence that the witness has been convicted of a crime shall be
admitted if elicited from the witness or established by public record but only
if the crime was a felony or involved moral turpitude, regardless of
punishment, and the court determines that the probative value of admitting this
evidence outweighs its prejudicial effect to a party.

 

(b)
 Time Limit.  Evidence of a conviction under this rule is
not admissible if a period of more than ten years has elapsed since the date of
the conviction or of the release of the witness from the confinement imposed
for that conviction, whichever is the later date, unless the court determines,
in the interests of justice, that the probative value of the conviction
supported by specific facts and circumstances substantially outweighs its
prejudicial effect. 

 





[3]        In his brief, Scope argues that his case
is analogous to Stone v. State, 17
S.W.3d 348 (Tex. App.—Corpus Christi 2000, pet. ref’d.)  In Stone,
a delivery-of-a-controlled-substance case, the trial court ruled during voir
dire that Stone’s prior murder conviction would be inadmissible during the guilt-innocence
phase.  Id. at 349.  Stone’s trial
counsel elicited testimony from Stone about his prior murder conviction.  Id.
at 351–52.  Because the State was
precluded from raising this prior conviction for impeachment, the court of
appeals reasoned that no reasonable trial strategy could have justified his
trial counsel’s actions.  Id. at 353.  Because the State could have used Scope’s
prior convictions for impeachment, we conclude that Stone is inapposite to the issue raised in Scope’s appeal.