**Affirmed and Opinion filed June 20, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00591-CR

### RONNIE PAUL KAPPEL, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 396th District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 1255890R**

## O P I N I O N

Appellant Ronnie Paul Kappel appeals from his conviction for assault of a family/household member. A jury found appellant guilty, and the trial court determined that he was a habitual offender and sentenced him to life in prison. In two issues, appellant contends that the trial court erred in admitting certain letters appellant wrote while in jail pending trial and in preventing appellant from presenting evidence regarding Child Protective Services (CPS) investigations

concerning the complainant's children. We affirm.[1]

*Background*

According to complainant Connie Martin, on the morning of January 18, 2011, appellant appeared at an apartment in Haltom City, Texas where Martin was living with her two children and her stepfather, Thomas Pritchett. Appellant and Martin had previously dated, ending their relationship in October 2010. Martin testified that, in the presence of Pritchett, appellant told her that he wanted to reunite; Martin replied that she did not want to get back together, and appellant left the apartment. After Pritchett left for work, appellant returned to the apartment. As Martin began to open the door, appellant pushed the door open, entered the apartment, and asked again if the couple could reunite, promising to get a job and car if Martin agreed. Martin testified that she told appellant "no" more than five times before appellant walked toward the apartment door. She walked behind him to let him out and to close the door, but before exiting, appellant turned and punched Martin in the face. Other evidence established that blood was found splattered on the apartment's front door. Martin further testified that she fell to the ground and lost consciousness. When she awoke, she felt sick and dizzy.

Appellant picked Martin up, carried her to the couch, and continued to ask if they could get back together. When Martin responded in the negative, appellant called her a "dirty whore" and left the apartment. Martin stated that she then fell asleep, only to wake later that night feeling physical pain in her face, neck, and head. Martin found herself unable to talk or swallow, and when she attempted to call Pritchett to tell him what had happened, she was unable to speak on the phone.

---

[1] Pursuant to its docket-equalization powers, the Texas Supreme Court transferred this appeal from the Second Court of Appeals to this court. *See* Tex. Gov't Code § 73.001.

The next day, Martin called the police and went to the hospital via ambulance. Martin's two daughters were witnesses to the assault and testified at trial.

Following his arrest, appellant mailed Martin letters from jail. Two of the letters were published in redacted form to the jury. In the letters, appellant apologized to Martin for "all the times that I have hurt you. I get so angry about things, then I don't react well. But . . . I HAVE NO EXCUSE." Appellant also claimed in the letters that his lawyer wanted to discredit Martin as a witness by contacting CPS. Appellant suggested his lawyer wanted to file "child endangerment charges" against Martin, but appellant said he told his lawyer not to do that. Appellant further asked Martin to sign a statement saying that she had lied. In one of the letters, he offered Martin $1,300 if the charges were dropped, and he asked her to "[p]lease drop the burglary, please." In the other letter published to the jury, appellant said "don't lie and say I did some burglary. That's bullshit, Connie." Appellant further remarked that he "will fight clean, dirty till we drop."

During trial, a discussion between the court, the State, and defense counsel occurred outside the jury's presence on the issue of the letters' admissibility. The unredacted letters were admitted for record purposes only as State's Exhibit 19A. Appellant specifically objected on relevance grounds, that any probative value was outweighed by undue prejudice, and that the letters would confuse and mislead the jury. The Court redacted language in one letter indicating appellant was writing from jail and any mention of his bond. The court also redacted the word "dope" from one of the letters. The Court then admitted the redacted letters as State's Exhibit 19B. The prosecutor published the redacted letters to the jury by reading them aloud.

3

Later during trial, the State objected to defense counsel's eliciting testimony about CPS investigations concerning Martin and her children. Outside of the presence of the jury, counsel was allowed to question Martin as to the existence, nature, and duration of several CPS investigations into alleged sexual abuse allegations made by Martin's daughters against their father, who used to live with Martin. Appellant apparently sought to introduce evidence of the investigations—together with appellant's threat of reporting Martin to CPS in one of his letters—to suggest Martin possessed a motive to lie about the assault. The State responded that the allegations were made a year and a half prior to the assault, no evidence existed that the abuse was occurring when the assault occurred, and appellant did not make the threat to contact CPS until after he had been arrested. The Court sustained the State's objection as to relevance and ruled that appellant could only question Martin regarding the existence of the investigations and whether appellant was aware of them and could not delve into specifics. Martin then testified that CPS had conducted an investigation into her family before January 2011, the date of the assault, and Appellant was aware of the ongoing investigation.

The jury returned a guilty verdict as to assault on a family/household member, but returned a verdict of not guilty to assault by impeding breath/circulation. At the conclusion of the punishment hearing, the court found the Habitual Offender Notice true and sentenced appellant to life in prison and a $10,000 fine.

*The Letters*

In his first issue, appellant contends that the trial court erred in admitting the above referenced letters appellant wrote to Martin while in jail pending trial. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). As long

4

as the court's ruling is within the zone of reasonable disagreement, we will not disturb that ruling. *Id.* Appellant specifically contends that these letters should have been excluded under Texas Rule of Evidence 403, which provides that relevant evidence can "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.

We presume that the probative value of relevant evidence substantially outweighs the danger of unfair prejudice from admission of that evidence. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990); *Andrade v. State*, 246 S.W.3d 217, 227 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). It is therefore the defendant's burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *Wenger v. State*, 292 S.W.3d 191, 204 (Tex. App.—Fort Worth 2009, no pet.); *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In reviewing the trial court's balancing test determination under Rule 403, we are to "reverse the trial court's judgment rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

The Court of Criminal Appeals has identified several factors to be considered in conducting the Rule 403 balancing test, including:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. These factors may well blend together in

5

practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). Furthermore, the trial court is not required to perform the balancing test on the record, and when the record is silent, appellate courts must presume that the trial court performed the appropriate balancing test. *Williams v. State*, 958 S.W.2d 186, 195-96 (Tex. Crim. App. 1997).

Appellant contends that the danger of unfair prejudice in admitting the letters outweighed their probative value because, although appellant apologizes for hurting Martin in one letter, it is not clear whether he was apologizing for assaulting her or for any emotional pain he may have caused her during the course of their relationship.[2] Appellant does not undertake to examine each of the six *Gigliobianco* balancing factors but generally posits that the letters were unfairly prejudicial because they had the tendency to arouse the jury's hostility or sympathy without regard to the logical probative force of the evidence and to mislead the jury into believing appellant was apologizing for—and thus admitting— the assault.

Looking at the *Gigliobianco* factors, we begin by noting that the trial court reasonably could have concluded that the clearer implication in the tone and substantive content of the letters was indeed that appellant was apologizing for assaulting Martin. He mentions that he "get[s] so angry about things, then

---

[2] Appellant additionally asserts that redactions made in the letters rendered them misleading; however, it does not appear that the portions of the letters appellant complains about as being redacted were actually redacted. The only redactions in the letters were to remove a mention that appellant was in jail, the word "dope" at one place, and a reference to appellant's $100,000 bond. Appellant does not specifically complain about any of these redactions, and the absence of these few words does not appear to render the letters misleading. Appellant further suggests that there is a fair amount of illegible and confusing language in the letters that contributes to the potential for unfair prejudice, but he does not identify specific language or make more specific argument in this regard.

6

[doesn't] react well," and that he had no excuse for his actions. He claimed that he loved her but "didn't go about it the right way"; instead, he "went the street way." He also asked her to "let this s*** go" and to tell "them" she lied. He urged her not to lie and say he "did some burglary" but did not deny the assault at any point. The trial court, therefore, could have concluded that the letters were highly probative and the State's need for them was substantial. It should also be noted that the time required to present the letters into evidence did not greatly extend the trial and that they were not cumulative of other evidence.

Although it is possible appellant was apologizing in the letters for mistakes he made generally in the couple's relationship rather than the assault, and thus they may have had some tendency to suggest decision on an improper basis or confuse or distract the jury from the main issues, the trial court was within its discretion in determining that the danger of unfair prejudice from the letters' admission did not substantially outweigh their probative value. *See Tienda*, 358 S.W.3d at 638. Accordingly, we overrule appellant's first issue.

*CPS Investigations*

In his second issue, appellant contends the trial court erred in preventing defense counsel from asking detailed questions of Martin regarding the CPS investigations concerning her children. Appellant specifically asserts that the trial court's ruling violated his rights to Due Process under the Fourteenth Amendment to the United States Constitution by preventing him from presenting his defense. *See* U.S. Const. amend. XIV, § 1.

In *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002), the Court of Criminal Appeals explained that a constitutional right to present a meaningful defense is rarely denied by an incorrect evidentiary ruling. A defendant does not have a constitutional right to present evidence just because it is favorable to his

cause. *Id.* at 659. A trial court can place reasonable restrictions on the evidence a defendant presents to the jury. *Id.* "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate' to the purposes they are designed to serve." *Id.* A trial court's exclusion of evidence offered by the defense will violate due process only if (1) the state evidentiary rule being applied categorically and arbitrarily prohibits the defendant from offering reliable or relevant evidence that is vital to his defense, or (2) the trial court's ruling erroneously excludes evidence that "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Id.* at 659-62, 665; *see also Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002).

Here, appellant does not assert the unconstitutionality of a rule of evidence but instead complains about the limitations the trial court placed on his cross-examination of Martin regarding CPS investigations concerning her children. Appellant suggests that the specifics of the investigations he was attempting to elicit would have bolstered his assertion that because he was aware of the alleged abuse and investigations and had threatened to further report Martin to CPS, Martin had a motive to fabricate her story about the assault. The trial court limited the cross-examination to whether or not CPS investigations existed and whether or not appellant was aware of them if they did. Defense counsel was not permitted to delve into the specifics of the investigations themselves, including the nature of the allegations being investigated.

Although appellant's trial counsel argued the relevance of the evidence he sought to present to the trial court, he did not argue that the court's limitations on cross-examination amounted to a violation of appellant's due process rights. Because counsel failed to make this argument in the trial court, it was not

preserved for appellate review. *See Clark v. State*, 365 S.W.3d 333, 339-40 (Tex. Crim. App. 2012) (holding that because defense counsel failed to alert the trial court that he was requesting relief based on a violation of defendant's constitutional rights, due process argument was not preserved for appellate review); *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (holding that due process right to present a defense is subject to forfeiture if not properly asserted in the trial court).

Moreover, even if the argument had been properly preserved, the limitations the trial court placed on defense counsel's cross-examination of Martin did not prevent appellant from presenting a defense. The trial court prevented appellant from going into the specifics and details of the CPS investigations, particularly, the nature of the conduct investigated and the duration; however, he was permitted to cross-examine Martin regarding the existence of the investigations and whether appellant knew about it. Further, as appellant acknowledges, the jailhouse letters the trial court admitted additionally substantiated the defense by showing appellant's threat to report Martin to CPS. In short, appellant was permitted to present his defense and was only barred from exploring specific details. Thus, the trial court's limitation on cross-examination did not rise to the constitutional level of violating appellant's due process right to present his defense. *See Potier*, 68 S.W.3d at 663-66; *Clark v. State*, 305 S.W.3d 351, 358-60 (Tex. App.–Houston [14 Dist.] 2010), *aff'd*, 365 S.W.3d 333.[3] We overrule appellant's second issue.

---

[3] In *Potier*, the Court examined the evidence the defendant was actually allowed to introduce to the jury and determined that it was sufficient to present a defense. 68 S.W.3d at 665–66 ("It may be seen that the erroneously excluded evidence was relevant to the defense of self-defense, but that their exclusion did not prevent the appellant from presenting a defense. For this reason, the error was not of constitutional dimension.").

In *Clark*, the defendant, on trial for capital murder, mounted the defense that the victim had committed suicide and attempted to introduce evidence to show factors in her life that might

We affirm the trial court's judgment.


/s/           Martha Hill Jamison
                      Justice

Panel consists of Justices Christopher, Jamison, and McCally.

Publish — TEX. R. APP. P. 47.2(b).

---

have driven her to the act. 305 S.W.3d at 358-60. The trial court excluded evidence establishing that CPS had removed the victim's daughter, questions on cross-examination of the victim's mother about her knowledge of the CPS investigation, CPS records concerning the victim's daughter and the death of her son, and evidence showing the victim's motive for being "upbeat" to a CPS worker. *Id*. at 358. Because other evidence was admitted substantiating the defense, these exclusions did not prevent the defendant from presenting a defense. *Id*. at 360. In its opinion in *Clark*, the Court of Criminal Appeals did not address this specific due process issue. 365 S.W.3d 333.