**Richard Glen STURGEON, Appellant,**

v.

**The STATE of Texas.**

**No. 1699–01.**

Court of Criminal Appeals of Texas.

May 21, 2003.

Jay Brandon, San Antonio, Janet Morrow, Spring, for Appellant.

William J. Delmore, III, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J. delivered the opinion of the Court, in which PRICE, JOHNSON, HOLCOMB, and COCHRAN, J.J., joined.

Appellant Richard Glen Sturgeon was indicted and tried by jury on a charge of aggravated robbery. TEX. PEN.CODE § 29.03. During pre-trial motions, and again at the conclusion of the State's case, defense counsel requested a writ of attachment for alibi witnesses who had failed to appear for trial. The trial court denied the request, and the defense did not call any witnesses at trial. The jury convicted appellant, and assessed punishment at 50 years imprisonment. The Court of Appeals affirmed the conviction. *Sturgeon v. State*, No. 14–99–00947–CR, 2001 WL 837956, 2001 Tex.App. LEXIS 5015 (Houston, [14th Dist.] July 26, 2001)(*not designated for publication*). We granted discretionary review to answer one question:

> What must defense counsel do to preserve error when the trial court denies his request for a writ of attachment for a subpoenaed witness under Art. 24.12., V.A.C.C.P; may he "show what the witness would have testified to" by asserting the anticipated testimony in open court, as one Court of Appeals says he may, or must he offer sworn testimony in support of that assertion, as the Court below has held in Appellant's case? [1]

---

1. In fact, the ground for review as presented in the briefs cites "Art. 42.12," but this ap-     pears to be a typographical error.

■ We hold that counsel's assertion of the anticipated testimony on the record in open court is sufficient to preserve the error. Therefore, we reverse the judgment of the Court of Appeals.

## Facts:

The victim in this case was attacked by two men when he returned home from work shortly after midnight on Christmas morning, 1998. The assailants struck him repeatedly in the face with a pistol, then took his keys, wallet and money. One of the assailants left in the victim's car, while the other drove away in a different vehicle.

The day after the robbery, appellant was arrested during a traffic stop, driving the victim's stolen car. He was subsequently identified by the victim in a cross-racial lineup. In the same lineup the victim failed to positively identify two other passengers from the car, one of whom was found carrying the victim's identification cards.

On June 22, 1999, the second day of pretrial motions before Judge Jeannine Barr, defense counsel requested writs of attachment on two witnesses. These witnesses had been subpoenaed by the defense and had appeared at an earlier trial setting. At that earlier appearance, they were sworn to return for trial on June 21st, but neither witness returned.

When defense counsel requested the writs of attachment on June 22nd, he described the anticipated testimony of the witnesses, based on his personal conversations with them. He asserted that their testimony would place the defendant in a location more than 30 miles from the scene of the robbery during the time of the offense.

Instead of looking to Article 24.12 of the Texas Code of Criminal Procedure,[2] which governs when attachment may issue, the trial court applied Article 24.14,[3] which provides for the issuance of an attachment when counsel has reason to believe that a material witness is about to leave the county of the prosecution. This section requires counsel to file a supporting affidavit with the clerk.

Because the trial court believed Article 24.14 to be the applicable rule, she declined to issue the writs unless defense counsel submitted an affidavit swearing that he believed the alibi witnesses were about to leave the county. Defense counsel did not wish to sign such an affidavit, as he had no reason to believe that the witnesses in question were planning to leave the county. Consequently, the request for a writ of attachment was denied.[4]

2. Unless otherwise indicated all future references to Articles refer to the Code of Criminal Procedure.

3. **Art. 24.12.** When attachment may issue
When a witness who resides in the county of the prosecution has been duly served with a subpoena to appear and testify in any criminal action or proceeding fails to so appear, the State or the defendant shall be entitled to have an attachment issued forthwith for such witness.
**Art. 24.14.** Attachment for resident witness
When a witness resides in the county of the prosecution, whether he has disobeyed a subpoena or not, either in term-time or vacation, upon the filing of an affidavit with the clerk by the defendant or State's counsel, that he has good reason to believe, and does believe, that such witness is a material witness, and is about to move out of the county, the clerk shall forthwith issue an attachment for such witness; ...

4. The exchange on the record in relevant part is as follows:
MR. HAYES: At this time, Your Honor, we would respectfully request attachments on two witnesses who were personally served and who were originally in court at an earlier trial setting and sworn to be back June the 21st of 1999, that being Patricia Smith and a

At trial, after the State rested, defense counsel again asked for an attachment, which was again denied by the court on the basis of Article 24.14. The defense produced no other witnesses, and the jury found appellant guilty of aggravated robbery. Two prior convictions served as enhancements during the penalty phase, and these, coupled with the use of a deadly weapon during the offense, resulted in the imposition of a 50-year sentence.

**The Court of Appeals:**

On appeal, appellant argued two points of error. The first was that the trial court erred by refusing to grant the writ of attachment. The second was that appellant received ineffective assistance of counsel when his trial attorney failed to obtain and present available witnesses.

Dimetrias Horton. Both of those individuals have been subpoenaed as potential alibi witnesses on behalf of Richard Sturgeon. I have personally spoken with both Patricia Smith and Dimetrias Horton and there is testimony and evidence that I understand they will give that will at approximately the times or the time of the alleged offense place the defendant, Richard Sturgeon, in Humble, Harris County, Texas, which is some 31 or 32 miles from the scene of the alleged aggravated robbery.

\* \* \*

It would be important to have these witnesses from the standpoint that the jury then at least would be able to hear and consider whether it's probable or likely that he could have rushed to Bellaire, Texas, the scene of the robbery, done the robbery and come back and been missing for the probable hour that it would have taken him to get from Humble to Bellaire and come back and still accomplish the robbery.

THE COURT: Does the docket sheet reflect those two people were sworn in on the last setting or were these people that were not sworn?

MR. HAYES: They were sworn. These two were sworn to come back.

\* \* \*

THE COURT: The Clerk says they were sworn. Do you have any reason to believe they are getting ready to leave the county or anything?

\* \* \*

THE COURT: She needs to get you on the record. I am just asking for purposes of the record. I know they were here and sworn. That serves as notice that they needed to be down here.

\* \* \*

And where is the paperwork showing—where is—where—where is the paperwork? Mr. Hayes, I think the law requires that you file an affidavit with the clerk stating that you think that they are material and about to move out of the county. At that point if you do that then based on what we have then I will grant attachments on these two people.

MR. HAYES: Judge, and certainly I don't—I don't mean to be argumentative, but is it the Court's position that the only way that we can get an attachment on a witness who has been sworn to return to court is through an affidavit with me saying that I think they are fixen [sic] to move out of the county?

THE COURT: I am just reading. 24.14 says—let me say for the record that I think this is absurd, but I have had very personal knowledge of how this ridiculous statute has been interpreted. My understanding, for an attachment to actually issue you have to follow every single dot and coma [sic] in 24.14 before an attachment can actually be issued or there could be repercussions. And I don't want to do anything until you do that. Sit down and scratch out an affidavit.

Judge Barr's belief that the writs could issue only upon a showing by affidavit that the witnesses were going to leave the county is not entirely unfounded. *See In Re Barr*, 13 S.W.3d 525, 546 (Tex.1998)("When a witness who resides in the county of the prosecution has been duly served with a subpoena to appear and testify in any criminal action or proceeding fails to so appear, the State or the defendant shall be entitled to have an attachment for such witness issued conditioned upon a showing that such witness is material and is about to move out of the county." [Here the opinion incorrectly cites to *both* Article 24.12 and Article 24.14, without clarifying which is the applicable section] ). Although the trial court's ruling here may have been based on this passage from *In Re Barr*, that case is not controlling, as is discussed later in this opinion.

The Court of Appeals held that the trial court did not err in refusing to issue the writ of attachment, and that defense counsel therefore was not ineffective for failing to preserve error. *Sturgeon v. State*, No. 14–99–00947–CR, 2001 WL 837956, 2001 Tex.App. LEXIS 5015 (Houston, [14th Dist.] July 26, 2001)(*not designated for publication*). In making this determination, the court recognized that Article 24.12 was more pertinent to the question presented than Article 24.14. However, the Court of Appeals addressed the issue as if the trial court had applied the correct statute, citing the proposition that a trial court's decision will be sustained if it is correct on any theory of law applicable to the case. *Id., citing Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The Court of Appeals concluded that defense counsel's description of the anticipated testimony was "hearsay" which "does not properly demonstrate the materiality of the witness' testimony . . ." *Id.* at *3, at *6.

## The *Erwin* procedure:

■ This Court has established a three-step procedure for preserving error when a subpoenaed witness does not appear. *Erwin v. State*, 729 S.W.2d 709, 714 (Tex. Crim.App.1987). First, the party must request a writ of attachment, which must be denied by the trial court. *Id.* Second, the party must show what the witness would have testified to. *Id.* Third, the testimony that the witness would have given must be relevant and material. *Id.* If all three requirements are met, reversible error will result unless the error made no contribution to the conviction or to the punishment. *Id.*

In this case, defense counsel requested a writ of attachment when a properly subpoenaed witness failed to appear, and the trial court denied the request. Therefore the Court of Appeals found that the first of the *Erwin* requirements had been met. At issue, then, is whether appellant properly showed what the witness would have testified to, and whether that testimony would have been relevant and material. The Court of Appeals found in this case that the trial court did not err in denying the requested writs because the appellant failed to offer any *sworn* testimony to establish materiality. *Sturgeon*, 2001 WL 837956, at *2–3, 2001 Tex.App. LEXIS 5015 at *5–6. The Court of Appeals addressed the second and third *Erwin* requirements together. *Id.* Although the second and third factors are largely intertwined, we will address them one at a time.

## A "proper showing":

Perhaps the most confusing and divisive issue in this case and in the cases cited by the parties is what constitutes a "proper showing" of materiality. The Court of Appeals here held that denial of the writs was not error where *appellant himself* neither submitted an affidavit nor gave sworn testimony as to the anticipated testimony of the witnesses. The mere statement of defense counsel in open court was "hearsay," according to the Court of Appeals, and insufficient to demonstrate the materiality of the witnesses' testimony.

In support of its holding the Court of Appeals cited language from *In Re Barr*, 13 S.W.3d 525, 546 (Tex.1998) and *Hardin v. State*, 471 S.W.2d 60 (Tex.Crim.App. 1971), suggesting that "an affidavit or sworn testimony by the appellant reciting what the witness would testify to is a minimum requirement." *Sturgeon*, 201 WL 837956, at *2, 2001 Tex.App. LEXIS 5015 at *5. We think the court's reliance on these cases is misplaced.

*In Re Barr* was a civil action for the removal of Judge James Barr for violations of the Texas Code of Judicial Conduct. One of the instances of misconduct involved the judge's improper use of judi-

cial process. Specifically, Judge Barr issued a writ of attachment for a witness without being requested to do so by either the State or the defense, and indeed without observing any of the procedural requirements for the issuance of such a writ.[5] *In Re Barr*, 13 S.W.3d at 545–547. The Texas Supreme Court affirmed the finding that the judge had exercised his inherent power in bad faith by seeking to have the witness "attached and jailed on his own motion, without the benefit of affidavits or a requisite showing of materiality." *Id.* at 547.

This case, in contrast, does not involve abuse of judicial power. The trial court simply did not believe that she had the authority to issue the writs without an affidavit stating that defense counsel believed that the witnesses were planning to leave the county. This belief likely sprang from some unfortunate language from *In Re Barr* requiring "a showing that such witness is material *and* is about to move out of the county." (emphasis added). *Id.* at 546, *citing* Tex.Code Crim. P. Ann. art. 24.12, 24.14 (Vernon 1997). However, we see no support for the *Barr* civil court's engrafting of the Article 24.14 requirements onto Article 24.12.

The *Hardin* case, like this case, involved the denial of defense requests to issue writs of attachment for alibi witnesses, without whom the defendant had no defense. *Hardin v. State*, 471 S.W.2d 60, 62 (Tex.Crim.App.1971)[hereinafter *Hardin I* ]. In that case also, the defense counsel

failed to support his request with a formal affidavit. *Id.*

The *Hardin* defense counsel did have the opportunity to take the stand during the trial "to state that his work product and investigation convinced him that these five witnesses would, if present, have testified that appellant could not possibly have been in the City of Midland on the day alleged in the indictment." *Id.* at 63. Despite this "sworn testimony," this Court upheld the trial court's denial of the requested bench warrant, apparently because: 1) the defendant *himself* did not make a sworn statement, and 2) the attorney admitted that neither he nor his investigator had actually talked to the witnesses, and did not know what their testimony would be. *Id.*

After exhausting state remedies, Hardin brought a federal habeas corpus petition in the United States District Court, raising the same issues. *Hardin v. Estelle*, 365 F.Supp. 39 (W.D.Tex.1973)[hereinafter *Hardin II* ]. The petition was granted by that court, and the grant was affirmed by the United States Court of Appeals for the Fifth Circuit. *Hardin v. Estelle*, 484 F.2d 944 (5th Circuit, 1973)[hereinafter *Hardin III* ].

Although both the trial and appellate courts here relied on *Hardin I* in their decisions, that case actually sheds very little light on the issue at hand.

First, if the defense counsel's assertions, whether sworn or unsworn, are mere "hearsay," as the Court of Appeals in this

---

**5.** According to the Supreme Court opinion:

In the instant case the writ of attachment, issued pursuant to Respondent's order, was sloppy at best. The writ was signed by an individual who was not the Harris County District Clerk. It required that Deputy Rendon appear in the 337th Judicial Court at 9:00 a.m. on January 17, 1996; however, the writ was not signed until an hour after

he was to appear. The writ of attachment refers to Deputy Rendon as the "defendant," rather than a witness. Moreover, Judge Barr admitted that prior to taking the step of depriving a citizen of his individual freedom, he had not researched the law regarding writs of attachment or witness bonds.

*In Re Barr*, 13 S.W.3d at 547.

case held, then how could the defendant's own sworn or unsworn assertions be anything but hearsay? Even if the defendant himself were to reduce the proposed testimony to writing and submit it in an affidavit, such a formality would not make it any less "hearsay." Any statement by *anyone* other than the missing witness (the "declarant" for hearsay purposes), describing what that witness did or would say, would be hearsay. *See* Tex.R. Evid. 801(d). The Court of Appeals' rejection of defense counsel's statement as "hearsay" rested on doubts about the reliability of the statement, rather than its characterization as hearsay in the legal sense.

As to the second point, this case is distinguishable from *Hardin I* in that the attorney in this case *did* speak personally to the witnesses, and therefore had a good idea as to the nature and significance of their proposed testimony. This fact alone lends significantly more credibility to the defense assertion. Furthermore, the witnesses in question in this case had been properly served with subpoenas, and had been sworn to return for trial. Because the issuance of a subpoena requires counsel to file a written application with the clerk, "stating that the testimony of said witness is material to the State or to the defense," [6] the requirement of additional "sworn testimony" seems redundant at best.

Finally, it should be noted that the issue was addressed by the federal courts when they granted the federal habeas petition in *Hardin II & III.* The district court found that the affidavit requirement had not been set out by any case prior to the petitioner's trial,[7] and that the denial of the attachment on the basis of failure to comply with the requirement was an ex post facto procedural rule which could not preclude review by the federal courts. *Hardin II* at 43–44. Addressing the merits of the claim, the court found that the denial of the defendant's right to present a defense by presenting alibi witnesses was "repugnant to the concept of justice at the core of the Sixth Amendment." *Id.* at 45.

In this case, the Court of Appeals apparently disagreed with the *Hardin II* federal court. The Court of Appeals found that the trial court did not err by refusing to grant the writs because defense counsel failed to show materiality when he described the proposed testimony on the record, rather than having the defendant himself testify under oath or submit a sworn affidavit containing the same information.

The court cited a 1974 opinion of this Court as an affirmation of the principle originally established in *Hardin I. White v. State,* 517 S.W.2d 543, 545 (Tex.Crim.App.1974)(*original submission*). While *White* does contain a helpful discussion of materiality in the context of a defendant's right to compulsory process, the case is distinguishable. First, in *White* there was no showing whatsoever of what the missing witness' testimony would have been. *Id.* at 545. More importantly, the

---

6. Tex.Code Crim. P. art. 24.03

7. The district court noted that this court announced the affidavit requirement in *Brito v. State,* 459 S.W.2d 834, 837 (Tex.Crim.App. 1970), which was after the *Hardin* petitioner's trial. However, even after *Brito,* the proper procedure required to obtain a writ of attachment or continuance to obtain the testimony of missing witnesses remains unclear. *See, e.g., Bowser v. State,* 816 S.W.2d 518 (Tex. App.-Corpus Christi, 1991)(defense counsel telling court what he believed missing witness would testify to was sufficient); *Erwin v. State,* 729 S.W.2d 709 (Tex.Crim.App. 1987)(bill of exceptions summarizing proposed testimony sufficient); *Willis v. State,* 626 S.W.2d 500 (Tex.Crim.App.1979)(calling for either an affidavit of the missing witness or a showing under oath of why the affidavit could not be obtained).

holding in *White* was based on allegations that the State had suppressed evidence by "facilitating" the absence of the witness. *Id.* at 546–48.

Because we granted review on the issue of how to properly preserve error, it should be noted that the question of how to preserve error in this context is really the question of how to establish *for the record* that the failure to attach the witnesses prevented appellant from presenting evidence that was "relevant, material, and vital" to his defense. *See Potier v. State*, 68 S.W.3d 657, 660 (Tex.Crim.App. 2002), *citing Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

A recent opinion from another Court of Appeals has held that a bill of exceptions dictated by defense counsel is sufficient to preserve error. *Trinidad v. State*, 949 S.W.2d 22 (Tex.App.-San Antonio, 1997). Therefore, we find it necessary to resolve the conflict.

**The Rules of Appellate Procedure:**

Texas Rule of Appellate Procedure 33, governing preservation of appellate complaints, is instructive. The rule sets out the prerequisites to presenting complaints for appellate review, and contains two subparts: Section 33.1 applies when the complained-of matter appears in the record. Section 33.2 applies when the matter would not otherwise appear in the record. That section requires the complaining party to present a formal bill of exceptions, and outlines the procedure for doing so.

In this case, however, counsel's request and the grounds for that request are contained in the record of the pre-trial motions and the trial itself. Therefore section 33.1 is applicable. That section requires very few formalities, and in fact states that "[n]either a formal exception to a trial court ruling or order nor a signed, separate order is required to preserve a complaint for appeal." Tex. R.App. P. 33.1(c).[8] Based on this rule, appellant in this case made a proper showing of what the witnesses would have testified to under *Erwin*. The requirement of sworn testimony has not been clearly established, and we believe that such a requirement is unnecessary.

**Relevance and materiality:**

■ The third of *Erwin's* requirements is that the testimony that the witness would have given must be relevant and material. *Erwin*, 729 S.W.2d at 714. The exclusion or denial of irrelevant or cumulative testimony does not amount to reversible error, because "[t]he Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use." *Washington*, 388 U.S. at 23, 87 S.Ct. 1920. Conversely, the failure to secure the attendance of witnesses who would be the only impartial witnesses testifying to a particular matter has been found to be

---

8. Rule 33.1, in applicable part reads as follows:

As a prerequisite to presenting a complaint for appellate review, the record must show that:
(1) the complaint was made to the trial court by a timely request, objection, or motion that:
A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and
(2) the trial court:
(A) ruled on the request, objection, or motion, either expressly or implicitly; ...

reversible error. *See, e.g., Bland v. State,* 152 Tex.Crim. 32, 211 S.W.2d 751 (1948)(error to deny continuance to obtain attendance of defense witnesses who were "the only disinterested witnesses not related by blood or marriage to defendant."); *Belton v. State,* 110 Tex.Crim. 142, 7 S.W.2d 1076 (1928)(rule against granting continuances when additional testimony is only "cumulative" did not apply when defendant's wife was the only witness to testify at trial.)

At appellant's pre-trial hearing, when defense counsel initially requested the attachments, he named two witnesses who would testify that the defendant was in Humble, Texas, at the time the robbery was committed in Bellaire, Texas. These witnesses had been properly subpoenaed at an earlier date and had notice that their presence was required on June 21st, but both failed to appear for trial.

During the trial, after the State rested, defense counsel reiterated his request for attachments. He also asked for a continuance, again detailing on the record the anticipated alibi testimony of the missing witnesses. The court again denied the requests, citing Article 24.14, but agreed to recess until the next morning to allow defense counsel time to get the witnesses into court.

When court reconvened the next morning, the defense rested without presenting any witnesses or any evidence. Because the defense had relied heavily on the alibi witnesses, without their testimony, he was unable to present a defense.[9] Just as the federal district court found in *Hardin II:*

> The petitioner's defense rested completely upon the material alibi witnesses he requested. As the facts developed, they were his only defense. Therefore, when he was denied the right to secure their attendance, without a hearing or a response from the state, he was denied the right to be heard. A conviction so obtained is repugnant to the concept of justice at the core of the Sixth Amendment.

*Hardin II* at 44–45; *See also, Wiley v. State,* 74 S.W.3d 399, 405 (Tex.Crim.App.2002)(addressing the erroneous exclusion of evidence which "effectively prevents the defendant from presenting his defensive theory."); *Potier,* 68 S.W.3d at 664 ("whether the exclusion of witnesses' testimony violated defendant's right to present a defense depends upon whether the omitted evidence, evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist.")

Here, as in *Belton* and *Bland,* the testimony of the missing witnesses was neither cumulative nor irrelevant. Denial of the right to attach the witnesses was, in effect, denial of the right to present a defense. Therefore, we find that there was a proper showing of relevance and materiality, meeting the third *Erwin* requirement.

Defense counsel in this case did everything required to preserve the error for appellate review. He complied with Texas Rule of Appellate Procedure 33.1. He

---

9. *The following exchange is illustrative of defense counsel's dilemma:*

THE COURT: Do we have other people we can put on?

MR. HAYES: This is the status as I understand it: With no one else to—the other witnesses that we had can only fill time around the time of the robbery, which does us no good unless we can patch that time, patch their testimony into the actual next person—

THE COURT: Okay.

MR. HAYES:—can alibi the time. I had subpoenaed people to do that so we'd have some continuing story and I think progression for the jury to see. With that being the case and with no other witnesses here that actually can alibi the time of this robbery and put Mr. Sturgeon in Humble, Texas at the time of the robbery, I don't have any additional to call.

made his request for the writs, which was denied. He described, on the record, the basis for his request, i.e., the need to present alibi witnesses and the testimony which those witness would be expected to give if they were brought to testify.[10] *See* FN4, FN8. Despite the trial court's reliance on the wrong section of the Code of Criminal Procedure, the plain language of the applicable section, Article 24.12, makes it clear that attachment of a witness who has been duly served with a subpoena *is a matter of right.* Article 24.12 does not contain any language requiring sworn testimony or affidavits. We do not believe that more should be required of counsel than to assert, on the record, the grounds for his motion or objection to the trial court's ruling, and to articulate sufficient information about the expected testimony to show materiality.

The judgment of the Court of Appeals is reversed, and the cause remanded to the trial court for proceedings consistent with this opinion.

KELLER, P.J., and WOMACK, KEASLER, and HERVEY, J.J., concurred.

---

10. After the State rested, when defense counsel made his second effort to obtain the writs, the trial court again indicated that she did not believe she had authority to order the attachments:

MR. HAYES: At this time, Your Honor, this is the situation as I understand it, and I just want to kind of make a brief record.

I suspect for the purposes of the record that I should at this time ask the Court not only for an attachment for Patricia Smith, who is the witness that we had the discussion on the record this morning about, and I should ask for a continuance for time to get her into court because she is, from the conversations I have had with her, definitively an alibi witness surrounding the time of this incident and would place the defendant at her home at or about the time of this incident, which—and her home being in Humble, Harris County, Texas, some 31 miles by my map from the alleged site of the robbery.

\* \* \*

THE COURT: I can only tell you that looking at Article 24.14 of the Code of Criminal Procedure I think there are certain requirements that have to be met before I can give an attachment. And also looking at *Boyle v. State*, 820 S.W.2d 122 (Tex.Crim.App., 1989), which is a case that involves securing witnesses before grand juries but requires the same, the same elements, my reading on that is that the requisites have not been met. I think I can find them in disobedience of a subpoena, something like that, but that doesn't get them down here.

MR. HAYES: That was my other—my only last ditch effort to, even as to Patricia Smith who I guess is the only one that we have any kind of leverage at all over, if anyone, would be to ask the Court to issue some sort of capias to—for a contempt hearing and find that she's in contempt of this Court's order not to return on the 21st and try to secure her attendance, and to ask that that be done and that we be allowed enough time to try to get her here for in the morning. And that's—I can't think of any other reason or any other way that this Court can secure her attendance, if the Court is correct, which I assume you are, about the requirements for the attachment issue. And I am not willing to lie to this Court in an affidavit and say that I know she's, I believe she's prepared to leave town or—I just can't. I don't—I have practiced 29 years without—very carefully trying not to lie to courts and I am not prepared to do so at this time just to get a witness into the courtroom. So—

THE COURT: Well, I will be honest with you, from a procedural standpoint I am not sure exactly how we are supposed to go forward.

\* \* \*

I don't have any trouble finding that she has refused to obey a subpoena and to assess a fine of $500.00 pursuant to Article 24.05. If she shows up in the morning and testifies then I think I have the option of remitting that fine. I don't know what else I am supposed to do.