02-11-420-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

 

NO. 02-11-00420-CR

 

 


 
 
 Jimmie Doyle Roberts
  
  
  
 v.
  
  
  
 The State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 297th District Court
  
 of Tarrant County (1163520D)
  
 January 10, 2013
  
 Opinion by Justice McCoy
  
 (nfp)
 
 


 

JUDGMENT

 

          This court has considered the record on appeal in this case
and holds that there was error in the trial court’s judgment.  It is ordered
that the judgment of the trial court is reversed and this case is remanded to
the trial court for a new trial.

 

 

 

SECOND DISTRICT
COURT OF APPEALS

 

 

 

By_________________________________

    Justice Bob
McCoy

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

 

 

NO. 02-11-00420-CR

 

 


 
 
 Jimmie
 Doyle Roberts
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE
297TH dISTRICT cOURT OF tARRANT cOUNTY

----------

MEMORANDUM
OPINION[1] 

----------

I.  Introduction

In three points,
Appellant Jimmie Doyle Roberts appeals his conviction for causing bodily injury
to an elderly person.  See Tex. Penal Code Ann. § 22.04 (West 2011).  We
reverse the trial court’s judgment and remand the case for a new trial.

II.  Factual and Procedural Background

Walgreens assistant
manager James Gomez testified that he was working with Roberts at around 1:00
p.m. on June 7, 2009, a Sunday, at the Colleyville Walgreens when an incident
occurred with complainant Bobby Petrey, an elderly man who was a regular
customer.[2]  Petrey
was short fifty-eight cents for his transaction, and he asked Gomez if he could
pay it the next time he was in the store.  Gomez told Petrey that Walgreens’s
policy would not permit this, and the customer behind Petrey paid for most of
Petrey’s transaction.

Gomez said that Petrey
appeared frustrated and continued to try to pay Roberts, the cashier, who told
him, “Mr. Petrey, it’s done, it’s taken care of, the bill is settled, it’s
done, you’re finished,” and then told him that if he wanted to give his money
to someone, to give it to the customer that had paid his bill.  Petrey remained
agitated.  During cross-examination, Gomez admitted that in his statement to
the police, he had said that Petrey berated Roberts, but he also testified that
he did not recall Petrey calling Roberts a “young punk” or a “piece of shit” or
inviting Roberts to meet him around the corner where he would rip Roberts’s
behind.

On his way out of the
store, Petrey said something like, “[Y]ou guys need to go to church.”  Gomez
testified that at Petrey’s statement, Roberts retorted, “What are you still
doing here, old man?  Why are you still here?”  Petrey walked back into the
store, and to avoid a scene, Gomez instructed Roberts to go to the office.  Roberts
became more agitated, and when Gomez tried to nudge him towards the office,
Roberts pushed back and told Gomez to stop pushing him.

Roberts stepped out from
behind the cash register, and Gomez described the following conversation
between Roberts and Petrey:

And at that point Mr.
Petrey is saying, [“]I’m not afraid of you.[”]  [Roberts] is saying the same
thing, [“]I’m not afraid of you either, old man.[”]  And as I thought [Roberts]
was on his way to the office, I turned my back to [him].  As I turned around
they were both face to face and [Roberts] pushed him.

Gomez said that he was less than a foot away from
Petrey and Roberts when he turned his back, and when he turned back around,
they were face-to-face.  Gomez said that he did not see Petrey raise his fist
or his cane but that Petrey fell when Roberts pushed him.

During cross-examination,
Gomez said that Petrey continually berated Roberts while approaching the
counter, and Gomez admitted that he used the word “provoke” with regard to
Petrey’s behavior towards Roberts when giving his statement to police.  Gomez
said that he did not recall asking Colleyville Police Detective Cheryl Womack[3]
about a criminal trespass notice for Petrey as a result of his conduct in the
store that day.

Portions of State’s
Exhibit 1, a video of the Walgreens transaction, were admitted and published to
the jury, as was Gomez’s 911 call after the incident.  Gomez said during
cross-examination that the published portion of the video did not show the
complete transaction between Roberts and Petrey.

We have reviewed the entire
video, which shows Roberts becoming physically agitated in response to
something Petrey says to him and Gomez physically restraining Roberts and
pushing him away as Petrey returns to the cashier’s area and approaches Roberts.
 Petrey continues to move towards Roberts, but their actual encounter is
off-camera.  The next time Petrey appears, he is flying through the air and
falling on the floor, still grasping his cane.  The recording of Gomez’s 911
call merely reflects that Gomez informed police that someone had been assaulted
at Walgreens, that the victim was still there, and that the assailant, an
employee, had left.

Colleyville Police
Officer Kevin Maddux testified that he was dispatched to handle a disturbance
call at Walgreens around 1:00 p.m. and that he spoke with Petrey and Gomez
around seven minutes later; Roberts had already left the scene.  Petrey was
agitated; he refused the offer of medical attention and told Officer Maddux that
he did not want to press charges against Roberts at that time but that he was
interested in pressing charges against Walgreens.[4]
 Petrey told Officer Maddux that he had tried to use a coupon and then had a
disagreement with the cashier when the coupon was rejected; he said that the
cashier had called him an old man and pushed him to the ground.  Officer Maddux
agreed that a cane could be a deadly weapon depending on how it was used.

On the first full day of
trial, Roberts subpoenaed Petrey to appear and moved for a continuance to
secure his attendance.[5]  The
trial court denied his motion.  The next day, outside the jury’s presence, Rene
Flores, Roberts’s court-appointed private investigator, testified that he
received a subpoena for Petrey and served it on him.  Flores described Petrey as
having a serious health condition and being very ill and disabled.  The State
stipulated to Petrey’s health and stated that Petrey’s health was the reason it
had not produced him as a witness.[6]  Flores
spoke with Petrey twice—once by phone and once at Petrey’s home—and he testified
that Petrey had told him both times that he had been shoved from behind and
that he had raised his cane up but not to hit Roberts.

When the trial court
denied Roberts’s motion for a continuance, Roberts asked the trial court to
issue an attachment to have Petrey brought to the courthouse.  The trial court
declined to issue the attachment, stating that it would be detrimental to
Petrey’s health.  Before the jury, Flores testified about Petrey’s poor health
as the reason for his absence from court.

During his informal bill
of exception, Roberts stated that he anticipated that Petrey would have
testified that he had raised his cane before Roberts shoved him, had used
derogatory language to provoke Roberts, and had used fighting words.

The trial court denied
Roberts’s requested jury instruction on self defense, and the jury found
Roberts guilty and sentenced him to fifteen years’ confinement.  The trial
court entered judgment on the verdict, and this appeal followed.

III. 
Compulsory Process

In three points, Roberts
argues that the trial court erred by denying his motion for a writ of
attachment to secure Petrey’s attendance at trial as a witness and by denying
his motions for a continuance to secure the attendance of Petrey and Detective
Womack.

With regard to Petrey’s
first point, both the state and federal constitutions guarantee an accused
compulsory process for obtaining a witness.  U.S. Const. amend. VI; Tex. Const.
art. I, § 10.  When a witness is subpoenaed and fails to appear, “the defendant
shall be entitled to have an attachment issued forthwith for such witness.”  Tex.
Code Crim. Proc. Ann. art. 24.12 (West 2009); Sturgeon v. State, 106
S.W.3d 81, 90 (Tex. Crim. App. 2003) (stating that article 24.12’s plain
language “makes it clear that attachment of a witness who has been duly served
with a subpoena is a matter of right”).

The court of criminal appeals
has established a three-step procedure for determining whether an appellant has
preserved error after a subpoenaed witness fails to appear:  (1) the party must
request a writ of attachment, which must be denied by the trial court; (2) the
party must show what the witness would have testified to; and (3) the testimony
that the witness would have given must be relevant and material.  Sturgeon,
106 S.W.3d at 85 (citing Erwin v. State, 729 S.W.2d 709, 714 (Tex. Crim.
App. 1987), overruled on other grounds by Burks v. State, 876 S.W.2d
877 (Tex. Crim. App. 1994)).  If the party meets all three requirements, “reversible
error will result unless the error made no contribution to the conviction or to
the punishment.”  Id.; see also Tex. R. App. P. 44.2(a).  When
the testimony of a missing witness is neither cumulative nor irrelevant, the
denial of the right to attach that witness is, in effect, the denial of the
right to present a defense.  Sturgeon, 106 S.W.3d at 89.

Conceding that Roberts
has met the first two requirements, the State contends that Roberts nonetheless
failed to preserve error because Petrey’s testimony was not material to the
defense.  To determine whether the testimony of the absent witness was relevant
and material, we must review the entire record.  See Trinidad v. State,
949 S.W.2d 22, 23 (Tex. App.—San Antonio 1997, no pet.).

None of the witnesses at
trial saw Petrey raise his cane before Roberts pushed him, and State’s Exhibit
1 does not show the physical encounter between Roberts and Petrey.  During his
informal bill of exception, among other things, Roberts stated that—based on
what Petrey told the investigator—he anticipated that Petrey would have
testified that he had raised his cane before Roberts pushed him, supporting
Roberts’s self-defense theory.  See Tex. Penal Code Ann. § 9.31(a)
(West 2011) (stating that a person is justified in using force against another
when and to the degree the actor reasonably believes the force is immediately
necessary to protect himself against the other’s use or attempted use of
unlawful force).

Roberts argues that for
him to present this evidence to the jury absent Petrey, he would have been forced
to waive his Fifth Amendment privilege against self-incrimination.  Cf.
Trinidad, 949 S.W.2d at 24 (stating that without the subpoenaed witnesses’
testimonies, appellant’s mother would have been the only witness able to
counter the State’s witnesses’ testimonies, and given her relationship to the
appellant, her credibility was subject to greater question); see also Sturgeon,
106 S.W.3d at 89 (noting that because the defense had relied heavily on the
alibi witnesses, without their testimony, he was unable to present a defense). 
Because there was no other evidence presented at trial that Petrey raised his
cane, the evidence is not cumulative.  Cf. Clark v. State, 305 S.W.3d
351, 356 (Tex. App.—Houston [14th Dist.] 2010) (holding that even if defendant
had preserved error, the same evidence came in elsewhere, making it
cumulative), aff’d, 365 S.W.3d 333 (Tex. Crim. App. 2012).  And because
it is directly related to Roberts’s self-defense theory—particularly in light
of Gomez’s testimony that Petrey berated Roberts immediately before the
physical altercation, and the video shows Petrey moving towards Roberts—Petrey’s
testimony is material and relevant.  Because we cannot determine beyond a
reasonable doubt that denying the writ of attachment did not contribute to Robert’s
conviction, see Tex. R. App. P. 44.2(a), we sustain Roberts’s first
point.  Based on our resolution here, we need not reach Roberts’s second and
third points.  See Tex. R. App. P. 47.1.

IV.  Conclusion

Having sustained
Roberts’s first point, which is dispositive, we reverse the trial court’s
judgment and remand the case for a new trial.

 

 

BOB
MCCOY

JUSTICE

 

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DATE:  January 10, 2013

 

 









[1]See
Tex. R. App. P. 47.4.





[2]The trial
court admitted a copy of Petrey’s birth certificate, which showed that he was
born February 3, 1936, making him seventy-three years old at the time of the
incident.





[3]Although
the State listed Detective Womack as a witness, Roberts was informed during
trial that Detective Womack was out of state; he then obtained a
subpoena—issued on the first full day of trial—and moved for a continuance,
arguing that Detective Womack was a material witness because she had indicated
that Gomez told her that the Walgreens management team had determined that
providing customer care to Petrey in the future might put additional staff at
risk of being put in an unpleasant situation and that Gomez had requested
information on how to obtain a criminal trespass warrant for Petrey if in the
future he again returned to the store, created a disturbance, and refused to
leave.  The trial court denied the motion and overruled Roberts’s objections to
its ruling.





[4]Roberts
offered, and the trial court admitted, a document from Walgreens, from the
senior legal assistant for tort litigation, reflecting that Petrey opened a
claim with Walgreens’s third party claims administrator but did not pursue the
claim and that no settlement was made.  The document also indicates that
Walgreens was not in possession of any criminal trespass notices or other
business records related to Petrey.





[5]Roberts
complained to the trial court that the State had listed both Petrey and
Detective Womack on its witness list, even though neither appeared at trial.





[6]Petrey’s
medical records were admitted into evidence during trial.