

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00420-CR

| | | |
|---|---|---|
| Jimmie Doyle Roberts | § | From the 297th District Court |
| | § | of Tarrant County (1163520D) |
| v. | § | January 10, 2013 |
| | § | Opinion by Justice McCoy |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in the trial court's judgment. It is ordered that the judgment of the trial court is reversed and this case is remanded to the trial court for a new trial.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Bob McCoy



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00420-CR

---

JIMMIE DOYLE ROBERTS                                          APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In three points, Appellant Jimmie Doyle Roberts appeals his conviction for causing bodily injury to an elderly person. *See* Tex. Penal Code Ann. § 22.04

---

[1]*See* Tex. R. App. P. 47.4.

(West 2011).  We reverse the trial court's judgment and remand the case for a new trial.

## II.  Factual and Procedural Background

Walgreens assistant manager James Gomez testified that he was working with Roberts at around 1:00 p.m. on June 7, 2009, a Sunday, at the Colleyville Walgreens when an incident occurred with complainant Bobby Petrey, an elderly man who was a regular customer.[2]  Petrey was short fifty-eight cents for his transaction, and he asked Gomez if he could pay it the next time he was in the store.  Gomez told Petrey that Walgreens's policy would not permit this, and the customer behind Petrey paid for most of Petrey's transaction.

Gomez said that Petrey appeared frustrated and continued to try to pay Roberts, the cashier, who told him, "Mr. Petrey, it's done, it's taken care of, the bill is settled, it's done, you're finished," and then told him that if he wanted to give his money to someone, to give it to the customer that had paid his bill. Petrey remained agitated.  During cross-examination, Gomez admitted that in his statement to the police, he had said that Petrey berated Roberts, but he also testified that he did not recall Petrey calling Roberts a "young punk" or a "piece of

---

[2]The trial court admitted a copy of Petrey's birth certificate, which showed that he was born February 3, 1936, making him seventy-three years old at the time of the incident.

3

shit" or inviting Roberts to meet him around the corner where he would rip Roberts's behind.

On his way out of the store, Petrey said something like, "[Y]ou guys need to go to church." Gomez testified that at Petrey's statement, Roberts retorted, "What are you still doing here, old man? Why are you still here?" Petrey walked back into the store, and to avoid a scene, Gomez instructed Roberts to go to the office. Roberts became more agitated, and when Gomez tried to nudge him towards the office, Roberts pushed back and told Gomez to stop pushing him.

Roberts stepped out from behind the cash register, and Gomez described the following conversation between Roberts and Petrey:

> And at that point Mr. Petrey is saying, ["]I'm not afraid of you.["] [Roberts] is saying the same thing, ["]I'm not afraid of you either, old man.["] And as I thought [Roberts] was on his way to the office, I turned my back to [him]. As I turned around they were both face to face and [Roberts] pushed him.

Gomez said that he was less than a foot away from Petrey and Roberts when he turned his back, and when he turned back around, they were face-to-face. Gomez said that he did not see Petrey raise his fist or his cane but that Petrey fell when Roberts pushed him.

During cross-examination, Gomez said that Petrey continually berated Roberts while approaching the counter, and Gomez admitted that he used the word "provoke" with regard to Petrey's behavior towards Roberts when giving his statement to police. Gomez said that he did not recall asking Colleyville Police

4

Detective Cheryl Womack[3] about a criminal trespass notice for Petrey as a result of his conduct in the store that day.

Portions of State's Exhibit 1, a video of the Walgreens transaction, were admitted and published to the jury, as was Gomez's 911 call after the incident. Gomez said during cross-examination that the published portion of the video did not show the complete transaction between Roberts and Petrey.

We have reviewed the entire video, which shows Roberts becoming physically agitated in response to something Petrey says to him and Gomez physically restraining Roberts and pushing him away as Petrey returns to the cashier's area and approaches Roberts. Petrey continues to move towards Roberts, but their actual encounter is off-camera. The next time Petrey appears, he is flying through the air and falling on the floor, still grasping his cane. The recording of Gomez's 911 call merely reflects that Gomez informed police that

---

[3]Although the State listed Detective Womack as a witness, Roberts was informed during trial that Detective Womack was out of state; he then obtained a subpoena—issued on the first full day of trial—and moved for a continuance, arguing that Detective Womack was a material witness because she had indicated that Gomez told her that the Walgreens management team had determined that providing customer care to Petrey in the future might put additional staff at risk of being put in an unpleasant situation and that Gomez had requested information on how to obtain a criminal trespass warrant for Petrey if in the future he again returned to the store, created a disturbance, and refused to leave. The trial court denied the motion and overruled Roberts's objections to its ruling.

someone had been assaulted at Walgreens, that the victim was still there, and that the assailant, an employee, had left.

Colleyville Police Officer Kevin Maddux testified that he was dispatched to handle a disturbance call at Walgreens around 1:00 p.m. and that he spoke with Petrey and Gomez around seven minutes later; Roberts had already left the scene. Petrey was agitated; he refused the offer of medical attention and told Officer Maddux that he did not want to press charges against Roberts at that time but that he was interested in pressing charges against Walgreens.[4] Petrey told Officer Maddux that he had tried to use a coupon and then had a disagreement with the cashier when the coupon was rejected; he said that the cashier had called him an old man and pushed him to the ground. Officer Maddux agreed that a cane could be a deadly weapon depending on how it was used.

On the first full day of trial, Roberts subpoenaed Petrey to appear and moved for a continuance to secure his attendance.[5] The trial court denied his motion. The next day, outside the jury's presence, Rene Flores, Roberts's court-

---

[4]Roberts offered, and the trial court admitted, a document from Walgreens, from the senior legal assistant for tort litigation, reflecting that Petrey opened a claim with Walgreens's third party claims administrator but did not pursue the claim and that no settlement was made. The document also indicates that Walgreens was not in possession of any criminal trespass notices or other business records related to Petrey.

[5]Roberts complained to the trial court that the State had listed both Petrey and Detective Womack on its witness list, even though neither appeared at trial.

6

appointed private investigator, testified that he received a subpoena for Petrey and served it on him. Flores described Petrey as having a serious health condition and being very ill and disabled. The State stipulated to Petrey's health and stated that Petrey's health was the reason it had not produced him as a witness.[6] Flores spoke with Petrey twice—once by phone and once at Petrey's home—and he testified that Petrey had told him both times that he had been shoved from behind and that he had raised his cane up but not to hit Roberts.

When the trial court denied Roberts's motion for a continuance, Roberts asked the trial court to issue an attachment to have Petrey brought to the courthouse. The trial court declined to issue the attachment, stating that it would be detrimental to Petrey's health. Before the jury, Flores testified about Petrey's poor health as the reason for his absence from court.

During his informal bill of exception, Roberts stated that he anticipated that Petrey would have testified that he had raised his cane before Roberts shoved him, had used derogatory language to provoke Roberts, and had used fighting words.

The trial court denied Roberts's requested jury instruction on self defense, and the jury found Roberts guilty and sentenced him to fifteen years'

---

[6]Petrey's medical records were admitted into evidence during trial.

7

confinement. The trial court entered judgment on the verdict, and this appeal followed.

### III. Compulsory Process

In three points, Roberts argues that the trial court erred by denying his motion for a writ of attachment to secure Petrey's attendance at trial as a witness and by denying his motions for a continuance to secure the attendance of Petrey and Detective Womack.

With regard to Petrey's first point, both the state and federal constitutions guarantee an accused compulsory process for obtaining a witness. U.S. Const. amend. VI; Tex. Const. art. I, § 10. When a witness is subpoenaed and fails to appear, "the defendant shall be entitled to have an attachment issued forthwith for such witness." Tex. Code Crim. Proc. Ann. art. 24.12 (West 2009); *Sturgeon v. State*, 106 S.W.3d 81, 90 (Tex. Crim. App. 2003) (stating that article 24.12's plain language "makes it clear that attachment of a witness who has been duly served with a subpoena *is a matter of right*").

The court of criminal appeals has established a three-step procedure for determining whether an appellant has preserved error after a subpoenaed witness fails to appear: (1) the party must request a writ of attachment, which must be denied by the trial court; (2) the party must show what the witness would have testified to; and (3) the testimony that the witness would have given must be relevant and material. *Sturgeon*, 106 S.W.3d at 85 (citing *Erwin v. State,* 729

8

S.W.2d 709, 714 (Tex. Crim. App. 1987), *overruled on other grounds by Burks v. State*, 876 S.W.2d 877 (Tex. Crim. App. 1994)). If the party meets all three requirements, "reversible error will result unless the error made no contribution to the conviction or to the punishment." *Id.*; *see also* Tex. R. App. P. 44.2(a). When the testimony of a missing witness is neither cumulative nor irrelevant, the denial of the right to attach that witness is, in effect, the denial of the right to present a defense. *Sturgeon*, 106 S.W.3d at 89.

Conceding that Roberts has met the first two requirements, the State contends that Roberts nonetheless failed to preserve error because Petrey's testimony was not material to the defense. To determine whether the testimony of the absent witness was relevant and material, we must review the entire record. *See Trinidad v. State*, 949 S.W.2d 22, 23 (Tex. App.—San Antonio 1997, no pet.).

None of the witnesses at trial saw Petrey raise his cane before Roberts pushed him, and State's Exhibit 1 does not show the physical encounter between Roberts and Petrey. During his informal bill of exception, among other things, Roberts stated that—based on what Petrey told the investigator—he anticipated that Petrey would have testified that he had raised his cane before Roberts pushed him, supporting Roberts's self-defense theory. *See* Tex. Penal Code Ann. § 9.31(a) (West 2011) (stating that a person is justified in using force against another when and to the degree the actor reasonably believes the force

9

is immediately necessary to protect himself against the other's use or attempted use of unlawful force).

Roberts argues that for him to present this evidence to the jury absent Petrey, he would have been forced to waive his Fifth Amendment privilege against self-incrimination. *Cf. Trinidad*, 949 S.W.2d at 24 (stating that without the subpoenaed witnesses' testimonies, appellant's mother would have been the only witness able to counter the State's witnesses' testimonies, and given her relationship to the appellant, her credibility was subject to greater question); *see also Sturgeon*, 106 S.W.3d at 89 (noting that because the defense had relied heavily on the alibi witnesses, without their testimony, he was unable to present a defense). Because there was no other evidence presented at trial that Petrey raised his cane, the evidence is not cumulative. *Cf. Clark v. State*, 305 S.W.3d 351, 356 (Tex. App.—Houston [14th Dist.] 2010) (holding that even if defendant had preserved error, the same evidence came in elsewhere, making it cumulative), *aff'd*, 365 S.W.3d 333 (Tex. Crim. App. 2012). And because it is directly related to Roberts's self-defense theory—particularly in light of Gomez's testimony that Petrey berated Roberts immediately before the physical altercation, and the video shows Petrey moving towards Roberts—Petrey's testimony is material and relevant. Because we cannot determine beyond a reasonable doubt that denying the writ of attachment did not contribute to Robert's conviction, *see* Tex. R. App. P. 44.2(a), we sustain Roberts's first point.

10

Based on our resolution here, we need not reach Roberts's second and third points.  *See* Tex. R. App. P. 47.1.

## IV.  Conclusion

Having sustained Roberts's first point, which is dispositive, we reverse the trial court's judgment and remand the case for a new trial.

BOB MCCOY
JUSTICE

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DATE:  January 10, 2013