COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| DARTAVIOUS QUAWNTREZ LAVON FOWLER, | § | No. 08-23-00091-CR |
| | § | Appeal from the |
| Appellant, | | |
| | § | 142nd Judicial District Court |
| v. | | |
| | § | of Midland County, Texas |
| THE STATE OF TEXAS, | | |
| | § | (TC# CR53971) |
| Appellee. | | |

## **MEMORANDUM OPINION**

Appellant Dartavious Quawntrez Lavon Fowler appeals the denial of a writ of attachment, which he requested for a witness that he intended on impeaching at trial for the purpose of showing racial bias against him.[1] In his sole issue on appeal, Fowler argues his constitutional rights to present his defense and confront witnesses against him were violated by the trial court's denial of the writ of attachment.[2] Finding no reversible error, we affirm the trial court's judgment.

---

[1] The appeal was transferred to this Court from the Eleventh Court of Appeals pursuant to a Texas Supreme Court docket equalization order. We apply that court's precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

[2] While Fowler's brief focuses on the Confrontation Clause and only mentions the right to present his defense, the State's brief addresses the right to compulsory process:

> in the last paragraph of his argument, Appellant does seem to complain about the "right to present his defense," of which the right to compulsory process is a component. *See Scrimo v. Lee*, 935 F.3d 103, 112 (2nd Cir 2019) ("The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause

## FACTUAL AND PROCEDURAL BACKGROUND

Fowler was tried and convicted of four counts of aggravated assault and two counts of accident involving injury. At trial, the evidence showed that Fowler, his then-girlfriend Amber Collins, and Amber's minor son were involved in a multi-vehicle collision. Although Fowler's theory was that Amber was driving the vehicle, multiple witnesses, including Amber and her son, testified that Fowler was the driver of the vehicle that caused the collision or testified to facts that suggested Fowler was the driver. According to testimony from the State's witnesses, Fowler and Amber were having a progressively escalating discussion inside the vehicle as Fowler was driving. Fowler started striking Amber and speeding. Amber's son called Amber's father for assistance. Amber's father testified that while on the phone with Amber's son, he overheard Fowler tell Amber, "I'll kill you, b****." Amber's son testified that Fowler told them that he would "kill us all." Fowler then ran a red light and collided with other vehicles at an intersection. Fowler exited the vehicle, grabbed Amber's son from the car, placed him on the side of a nearby gas station, then left the scene on foot. Later, Fowler was found by police officers who scoured the area for him. Officer Blandford and Sergeant Taylor testified that Fowler denied driving the vehicle and claimed he fled the scene to obtain assistance from emergency personnel.

The State had subpoenaed eyewitness Bethany Plunkett to testify at trial but later decided not to call her as a witness. Fowler asserted the right to confront Plunkett at trial, as she told the officers that Fowler exited the driver side of the vehicle and "took off" while Amber exited out of the passenger door, which statements were captured on Officer Albo's and Sergeant Taylor's

---

of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment."). And Appellant did indeed object to the denial of the writ of attachment on the basis of the Fifth, Sixth and Fourteenth Amendments. [record citation] So the State, in an effort to try and construct an argument from Appellant's brief, will analyze the trial court's denial of the writ of attachment to determine if it erred using the relevant constitutional provisions, case law and statutes.

bodycam footage. Officer Albo was not available to testify, and the parties debated at trial over which portions of Officer Albo's bodycam footage would be shown to the jury. Defense counsel wanted to show only the portion in which Officer Albo mentioned Amber was the driver, while the State wanted to include Plunkett's response correcting Officer Albo and saying Fowler was the driver and that he fled on foot. In a later conversation between Plunkett and Sergeant Taylor, which was recorded on Sergeant Taylor's bodycam, Plunkett referred to Fowler as a "f***ing n*****."

In an attempt to have Plunkett testify in person, defense counsel moved for a writ of attachment, arguing that Plunkett's testimony was material and favorable to Fowler. Defense counsel argued Plunkett's testimony was material because she was an eyewitness. And defense counsel argued Plunkett's testimony was favorable to Fowler in that her racism tainted her perception, making her testimony that Fowler was the driver was uncredible. The trial court denied the writ of attachment but allowed Plunkett to testify via Zoom. Fowler virtually conducted direct examination, questioning Plunkett about her observations. As expected, she testified that she observed Fowler exit out of the driver's side of the vehicle. Fowler then asked Plunkett whether she had ever called Fowler the "n" word, and she denied doing so. Based on the denial, the trial court allowed defense counsel to play Officer Taylor's bodycam footage of Plunkett calling Fowler the "n" word for the jury for impeachment purposes. In closing arguments, Fowler argued that Plunkett was the first witness to identify Fowler as the driver. Based on this fact, Fowler's theory was that Plunkett's racism polluted the State's evidence and discredited its case against him.

On appeal, Fowler argues the trial court committed reversible error by denying his writ of attachment, which prevented the jury from observing Plunkett's demeanor, thereby denying him his constitutional rights to present his defense and confront witnesses against him. In this appeal, we address whether the trial court abused its discretion in denying Fowler's writ of attachment.

## STANDARD OF REVIEW

We review the denial of a writ of attachment for abuse of discretion. *Clark v. State*, 305 S.W.3d 351, 356 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 365 S.W.3d 333 (Tex. Crim. App. 2012). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021). Reviewing courts do not disturb the rulings of a trial court unless they fall outside the zone of reasonable disagreement. *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005).

## ANALYSIS

### A. Fowler's Confrontation Clause arguments

Fowler argues that his Sixth Amendment right to confront witnesses against him was violated when the trial court denied his writ of attachment and allowed Plunkett to testify via Zoom. Although Fowler would have had a right to cross-examine Plunkett had the State called her to testify, the Confrontation Clause is not implicated in the question on appeal regarding whether the trial court erred in denying his writ of attachment.

The Sixth Amendment guarantees a defendant the right to confront witnesses against him. U.S. CONST. amend. VI. The objective of the Confrontation Clause was to extinguish the archaic civil-law practice of trying defendants using depositions, ex parte affidavits, or other like "evidence" against the accused instead of procuring the physical presence of the accusatory witnesses so that the jury may judge their credibility and demeanor. *California v. Green*, 399 U.S. 149, 156 (1970). To remedy this practice, the Clause demands face-to-face confrontations[3] with

---

[3] The literal right to physically confront an accusatory witness reflects the idea that "confrontation is essential to fairness" because it mitigates the risk that the defendant will be convicted on the unreliable testimony of the state's witnesses. *See Coy v. Iowa*, 487 U.S. 1012, 1019 (1988) ("It is always more difficult to tell a lie about a person 'to his face' than 'behind his back.'"). However, the face-to-face element of the right to confrontation is not absolute and at

witnesses who are subject to cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (stating a "primary interest secured by [this right] is the right of cross-examination"); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). In short, the right to confront witnesses is essentially a procedural safeguard for assessing the reliability of testimony against the accused by providing him the opportunity to cross-examine the state's witnesses, with a strong preference for doing so in person. *Crawford v. Washington*, 541 U.S. 36, 61 (2004); *Romero*, 173 S.W.3d at 505. Thus, had the State produced Plunkett as a witness to testify against Fowler, he would have had the right to confront her on cross-examination.

Here, however, Fowler called Plunkett as a witness; thus, the Confrontation Clause is not implicated. *See, e.g., Galindo v. State*, No. 02-22-00151-CR, 2023 WL 2607752, at *3 (Tex. App.—Fort Worth Mar. 23, 2023, no pet.) (mem. op.) (not designated for publication) (stating that the Confrontation Clause is not implicated when the witness is a defense witness). Fowler's references to Confrontation Clause cases are therefore inapposite. Instead, Fowler's argument implicates a different aspect of the Sixth Amendment: the right to present a defense. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (2009) ("While the Confrontation Clause guarantees a defendant the right to be confronted with the witnesses 'against him,' the Compulsory Process Clause guarantees a defendant the right to call witnesses 'in his favor.'"). In this regard, we examine whether the trial court erred in denying Fowler's writ of attachment.

---

times gives way to public policy considerations where the reliability of the testimony is otherwise assured. *Maryland v. Craig*, 497 U.S. 836, 849 (1990); *Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005).

## B. Trial court's denial of Fowler's writ of attachment

The public policy behind writs of attachment[4] draws from the Sixth Amendment right to the compulsory process, which guarantees defendants the right to present the testimony of witnesses in their favor. *Erwin v. State*, 729 S.W.2d 709, 714 (Tex. Crim. App. 1987) (en banc), *superseded by statute on other grounds as stated in Burks v. State*, 876 S.W.2d 877 (Tex. Crim. App. 1994) (en banc); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense . . . ."). Thus, when a witness is properly subpoenaed but fails to appear at trial, a party may seek a writ of attachment to compel that witness's physical presence in court to testify. *Kinnett v. State*, 623 S.W.3d 876, 903 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) ("A writ of attachment is the proper remedy when, after being subpoenaed, a witness fails to appear as directed."). Obtaining a writ of attachment is a matter of right. *Erwin*, 729 S.W.2d. at 713.

To preserve error when a subpoenaed witness does not appear, the Court of Criminal Appeals has prescribed a three-step process: (1) the party must request a writ of attachment and obtain the trial court's denial thereof; (2) the party must show what the witness would have testified to had he appeared; and (3) the party must show that the absent witness's testimony would have been both relevant and material. *Sturgeon v. State*, 106 S.W.3d 81, 85 (Tex. Crim. App. 2003). Provided these three requirements are met, reversible error results, unless the error did not contribute to the defendant's conviction or punishment. *Id.* A court's exclusion of cumulative or irrelevant testimony does not amount to reversible error. *Id.* at 88 ( "the Framers of the Constitution

---

[4] "An 'attachment' is a writ issued by a clerk of a court under seal, or by any magistrate . . . in any criminal action . . . commanding some peace officer to take the body of a witness and bring him before such court . . . to testify [on] behalf of the State or of the defendant." TEX. CODE CRIM. PROC. ANN. ART. 24.11.

did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use") (quoting *Washington*, 388 U.S. at 23).

The trial court's denial of Fowler's writ of attachment does not constitute reversible error. Regarding the first prong of the standard, the parties do not dispute that Plunkett was duly subpoenaed to appear at trial but did not make an appearance. Regarding the second prong of the standard, Fowler revealed that Plunkett would testify that Fowler was the driver. Fowler then stated he would question Plunkett about a later statement she made to an investigating officer wherein she called Fowler the "n" word. Finally, relying on *Kinnett v. State*, where the court analyzed the denial of a writ of attachment for constitutional error based on the Sixth Amendment right to the compulsory process, Fowler argued in the trial court that Plunkett was both a material and favorable witness because her racism tainted her perception of the events and diminished her credibility as an eyewitness. According to Fowler, it was necessary that Plunkett testify in person so the jury could observe her demeanor and judge her credibility when questioned about her racist statement.

As the trial court concluded, Fowler failed to demonstrate how Plunkett's testimony was material to Fowler. Plunkett's anticipated testimony was that Fowler was the driver. At trial, there were several other eyewitnesses who also identified Fowler as the driver, so Plunkett's testimony was immaterial and cumulative. *See Sturgeon*, 106 S.W.3d at 88 (explaining the exclusion of cumulative testimony is not reversible error).

Fowler's argument that Plunkett was a favorable witness also fails because Plunkett's testimony identifying Fowler as the driver incriminated Fowler. *See Kinnett*, 623 S.W.3d at 905 (finding witness's testimony regarding defendant's erratic driving was unfavorable to defendant and thus affirming the denial of his writ of attachment despite counsel's request that the jury be

7

able to judge the witness's credibility during cross-examination). And even if we were to assume, as Fowler argued at trial, that Plunkett's testimony was "favorable" to him (insofar as her testimony could be discredited and her credibility destroyed by her racist statement), Fowler was able to accomplish his goal when he questioned Plunkett on direct examination via Zoom. By having her testify—albeit virtually—that Fowler drove the vehicle and then deny that she called him the "n" word, Fowler was able to introduce into evidence the bodycam footage of Plunkett referring to Fowler as a "f***ing n*****," thereby showing Plunkett lied in court and used the racial slur. Therefore, even assuming arguendo that Plunkett using a racial slur was favorable to him, Fowler was able to make this showing through Plunkett's virtual testimony, which served to allow into evidence the bodycam footage. Accordingly, denying the writ of attachment could not have contributed to the defendant's conviction or punishment.

Because Fowler failed to show that reversible error resulted from the trial court's denial of Fowler's writ of attachment, his sole issue on appeal is overruled.

## CONCLUSION

We affirm the trial court's judgment.

LISA J. SOTO, Justice

January 16, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

8